STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. EDGAR C. MURPHY, PLAINTIFF IN ERROR.

Argued March 16, 1915—Decided June 14, 1915.

1. Assuming that it is error to admit in evidence on the trial of an indictment for murder testimony given by a witness at a coroner's inquest, which witness died after the inquest and before the trial, if such testimony be merely cumulative as to uncontroverted facts, the error is harmless. Cumulative evidence means additional evidence to support the same point and of the same character as evidence already admitted. Upon a disputed fact cumulative evidence might be the controlling factor in deciding the point in favor of the party offering it, and, in such a case, if the cumulative testimony were illegal, it would be injurious. *Myers* v. *Weger*, 62 *N. J. L.* 432, explained.

2. The rules of law with regard to the admission of evidence are generally alike in civil and criminal cases; and evidence improperly admitted, but which is merely cumulative as to uncontroverted facts, is not injurious error, as well in criminal as in civil cases.

3. *Quære:* Is the testimony given by a witness at a coroner's inquest, which witness died between the date of the inquest and the trial of the accused, admissible upon the trial of an indictment for murder upon the theory that such a proceeding is tantamount to a preliminary hearing of a charge against an accused person before a magistrate, when the hearing is conducted in the presence of the accused who is confronted with the witnesses and afforded an opportunity to cross-examine them, either by himself or with the aid of counsel?

4. If in the course of a trial a witness is asked a question which is not objected to, and, after being answered, motion is made to strike out, but no recognized legal ground of objection is stated, although an observation be made by counsel in moving to strike out, which, of itself, is irrelevant to the answer and does not go to the question at all, the question and answer are properly allowed to stand because no legal or valid ground of objection is invoked against their admissibility.

5. A voluntary confession is one not extorted by any sort of threats or violence or obtained by any direct or indirect promise; and, when shown not to have been induced by either the one or the other of these legally objectionable methods, it may be offered in evidence.

6. A trial judge is justified in admitting in evidence the confession of a criminal defendant notwithstanding that the friends and family of the accused were denied admission to the jail until

after the confession was made, there being no statute or rule of law which provides that a confession shall not be taken from a prisoner until after he shall have been visited either by friends or relatives.

7. It is the rule that on cross-examination a witness may not be examined relative to matter upon which he was not examined in chief, and which matter is material only by way of defence; and it is also the rule that if cross-examining counsel questions a witness upon matter not elicited on direct examination, he makes him his own witness as to such matter, the same as if he had called him when putting in his client's proofs.

8. In view of the law that a voluntary confession is one not extorted by any sort of threats or violence or obtained by any direct or implied promise, it cannot be involuntary because counsel representing the accused was not present when it was made.

9. Article 6 of the amendments to the constitution of the United States, providing, *inter alia,* that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defence, cannot be invoked by one indicted for an infraction of the penal code of this state, as that amendment operates solely upon the federal authorities.

10. The constitution of New Jersey provides that in all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel in his defence. It does not provide that a defendant shall have the right to have the assistance of counsel from the time of his arrest, but only for his defence. The word *defence,* as here used, means that the defendant is entitled to be represented and defended by counsel when put in jeopardy on his trial, and that his counsel shall have reasonable access to the prisoner for the purpose of preparing his defence; and the provision cannot be construed to mean that one accused of crime shall have the benefit of counsel to advise him as to whether or not he shall confess.

11. If a criminal defendant were entitled to the assistance of counsel to advise him as to making a confession, his right in that regard would be no higher or greater than the right to have the assistance of counsel in his defence, which is a right and privilege for the benefit of accused persons which they may waive and renounce; and when the record in a criminal case does not disclose whether the defendant was of ability to procure counsel or whether he requested that counsel be assigned to him, it will be presumed that he failed to invoke the privilege.

On error to the Burlington Oyer and Terminer.

For the plaintiff in error, *Francis J. Smith* and *Francis Tracy Tobin* (of the Philadelphia bar).

For the defendant in error, *Samuel A. Atkinson,* prosecutor of the pleas, and *Robert Peacock.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. The plaintiff in error, Murphy, was convicted of murder in the first degree at the October term, 1914, of the Burlington Oyer and Terminer, and brings error. The entire record of the proceedings had upon the trial is brought up under section 136 of the Criminal Procedure act and he specifies eleven causes for reversal under section 137. They were argued under six heads, as follows: (1) the admission of the testimony of Charles Wilhelm given at the coroner's inquest, it having been shown that he was dead at the time of the trial; (2) the admission of the testimony of Hilda (mentioned as Ida) Wilhelm, it being alleged that it was a conclusion of the witness as to why Murphy ceased his visits at the house; (3) that the confession of the defendant was not shown to be voluntary because the defendant was in custody and the sheriff did not permit anyone, including his attorney, to visit him until after the confession had been obtained; that it is the duty of the state to prove that the confession was voluntary; (4) in the admission in evidence of the cartridge shells found in the Murphy house as it did not appear they belonged to the defendant or were the same shells referred to in the confession; and, also, in the admission in evidence of the gun found in the room of the defendant, as there was no proof that it was the gun mentioned in the confession; (5) the refusal of the court to charge the jury that they should take into consideration the fact that the friends and family of the defendant were denied admission to the jail until after he confessed, and (6) the refusal to charge that if the jury believed the defendant was denied assistance of counsel, and that his counsel was refused permission to see him before the confession was made, that that should be taken into consideration in giving credence to the confession; and that

the jury must consider the fact that the defendant was denied the right, secured to him under the state and federal constitutions, to be represented by counsel from the time of his arrest, in giving credence to the confession, and that no one was permitted to see him for several days, except the officers who secured the confession.

1. The prosecutor of the pleas offered the transcript of the testimony of Charles Wilhelm, given at the coroner's inquest— he having afterward died—and proved that the defendant was there present, that he was represented by counsel who cross-examined the witnesses. Objection was made to the admission of the testimony, on the ground that. the cause was not an action in which the defendant was a party, that a coroner's inquest is an investigation on the part of the state alone and there is no one who is the defendant. The evidence was admitted.

The testimony of Wilhelm was relevant to the issue but was merely cumulative upon an uncontroverted point. He stated that he owned the place where he lived in Delran township and was home the night of the tragedy; that Herman Fisher, the deceased, came to his house with his daughter Hilda and bid her good-bye at the door; that some time after that his daughter Florence came upstairs and said they heard someone shoot; that the girls claimed they heard a second shot; that he left the house with a loaded revolver, which he shot once because Herman and his brother had been frightened by a ghostlike appearance (some time before) and he had told them that if anybody tried to frighten them to shoot a revolver once and he would answer it, and that is the reason he fired the shot; that he knew where Herman's body was found on Mrs. Hunter's place—a leisurely walk of about eight or ten minutes; that that was the way Herman used to go home. He went back to his own home and went to bed, and then George Fisher and Murphy, the defendant, came and roused him about half-past one. Asked what Murphy told him, he said he did not tell him anything, the first message they gave to his wife who opened the door, and he heard that Herman was lying in the cornfield. Asked if Murphy told

him that, he said Murphy and George Fisher were talking at the same time. He then ran to his neighbor Mr. Wigmore and called him; that while he was calling him his wife had been speaking to Fisher and Murphy to make sure the boy was dead, and they said, "Yes, they had lighted a match or something and he was perfectly dead;" that he geared a team to go over to Mr. Llewellyn's, and when he came back he started off towards the place where Herman lay; that Mr. Fisher, the boy's father, was coming over toward him and he went there with Fisher's father. The only cross-question was as to whether he went over and saw the body that night and he replied that he did.

Now, it must be conceded that the only facts of any importance to the defendant which were testified to by Wilhelm at the coroner's inquest were, that Murphy came to his house with George Fisher on the night of the tragedy and either said or stood by when Fisher said, or joined him in saying (it does not clearly appear which), that Herman was dead, and that Wilhelm then went over to where the body was and saw it himself.

That Herman Fisher was dead was proved beyond doubt. In fact, Murphy's counsel, in arguing the cause before this court, admitted that he had been foully murdered, but claimed that the defendant, Murphy, was not the murderer. George Fisher, a brother of the deceased, testified that on the night in question he was going in search of his brother and met Murphy going toward his (Murphy's) home; that Murphy went on home, got his revolver, returned and joined him, George, and they came to where the body was lying in the bushes; that Murphy lit a match and by the light of it they saw the body, and after making this discovery, they, George and Murphy, went to Wilhelm's house and called the inmates and told them the news. Ida Wilhelm, a daughter of the deceased witness, testified that George Fisher and Murphy came to their house that night and woke them up after they had gone to bed. Hilda testified to the same thing, as did Helen, Anna and Florence. Mrs. Charles Wilhelm, the mother of the girls, testified that George Fisher and Murphy came to their

house that night, and that she asked Murphy if he wouldn't go back and see if Herman was alive yet, and Murphy said, "Oh, no, he ain't alive. I struck a match and his eyes are all stuck in. He is dead." Thus it appears that seven witnesses, who are uncontradicted and unimpeached, established the fact of Murphy being at the Wilhelm house that night after the tragedy. And, besides, the *corpus delicti* was not only proved but is admitted. Furthermore, the defendant himself in his confession corroborates the point.

Assuming that the admission of the testimony given by Charles Wilhelm (since deceased) at the coroner's inquest was error, it was harmless. It is impossible to believe that it could in any sense have injuriously affected the prisoner on the merits of his defence. Therefore, it becomes unnecessary to consider and decide whether the testimony given by a witness at a coroner's inquest in the presence of the accused who was represented by counsel who cross-examined the witness, which witness died between the date of the inquest and the trial of the accused, is admissible upon the trial of an indictment for murder upon the theory that such a proceeding is tantamount to a preliminary hearing of a charge against a defendant before a magistrate, conducted in his presence, where he was confronted with the witnesses and afforded an opportunity to cross-examine them, either by himself or with the aid of counsel.

Under our Criminal Procedure act no judgment given upon an indictment shall be reversed, except for such error as shall or may have prejudiced the defendant in his defence upon the merits. *Comp. Stat., p.* 1863, § 136. See *Hunter* v. *State,* 40 *N. J. L.* 495; *Genz* v. *State,* 59 *Id.* 488. And where it clearly appears that testimony, illegally admitted in a criminal trial, could not have injuriously affected the defendant, the admission of such illegal testimony does not constitute ground for reversal. *State* v. *Simon,* 71 *Id.* 142.

This testimony, even if harmful of itself, was, as already remarked, merely cumulative of other testimony to the same effect, which was uncontroverted.

*Myers* v. *Weger,* 62 *N. J. L.* 432, 442, upon a cursory view, might seem to hold that evidence merely cumulative, which was improperly admitted, did not constitute injurious error, even though that evidence were cumulative upon a controverted point, but an examination of the opinion of this court will show that, in that case, as in this one, the question upon which the illegal evidence was admitted was as to an uncontroverted fact. The Myers case was a suit against a decedent's devisee for a debt contracted by the former in his lifetime, and, after proof was made of the existence of the debt itself, testimony was introduced that the decedent had delivered to the plaintiffs, as evidence of the debt, a promissory note which he had drawn to his own order but had not endorsed. It was held that its reception in evidence was not injurious error, because, unendorsed, it proved nothing, and if it had been endorsed its effect would have been merely cumulative.

Our Supreme Court, in *Dundee Manufacturing Co.* ads. *Van Riper,* 33 *N. J. L.* 152, 156, defined cumulative evidence as additional evidence to support the same point, and of the same character as the evidence already produced, quoting Chief Justice Savage, in *People* v. *Superior Court of New York,* 10 *Wend.* 285.

Upon a disputed fact, cumulative evidence, it will be seen at a glance, might be the controlling factor in deciding the point in favor of the party offering it, and, in such a case, if the cumulative testimony were illegal, it would be injurious.

The rules of law with regard to the admission of evidence are generally alike in civil and criminal cases. *Whart. Cr. Ev.,* § 24*b.* And there is nothing to take the testimony of a party sworn at the coroner's inquest, who has since died, and which testimony is offered on defendant's trial for murder after the witness' death, and admitted, out of the general rule that merely cumulative evidence as to uncontroverted facts, improperly admitted, is not injurious error.

2. It is alleged as error that the court admitted the testimony of Hilda Wilhelm, as it appears in the second assignment (called third in the brief). The reason why reversal should be had for this alleged error, as stated in the brief, is

because the witness gave a conclusion as to the reason why Murphy ceased his visits to her; and it was so argued orally.

After testifying that Murphy called upon her twice, the following occurred:

"Q. Do you know of your own knowledge why Murphy did not come there any more?

"A. Because Herman told me——

"Mr. Tobin—I object——

"[Last question read.]

"The Court—Answer yes or no.

"A. Yes.

"Q. Well, why didn't he come?

"A. Because I sent him word that he need not come over because he was a married man.

"Q. Who did you send the word by?

"A. I sent that by Herman.

"Q. By Herman Fisher?

"Mr. Tobin—I ask that be stricken out. She believed it because she was told it by Herman Fisher.

"The Court—She does not say she was told. She says she sent word by Herman Fisher to Murphy not to call there any more because he was a married man. This is what she testified to as I recall the testimony."

This testimony is supposed to bear upon the question of motive—that is, it is suggested that Murphy was led to murder Herman Fisher, at least, for one reason, because Hilda Wilhelm sent him word by Herman that he need not come over to see her because he was a married man. In the first place, it does not appear that the message was ever delivered. And, in the second place, while it was asked that the answer be stricken out, no legal reason for invoking such action was stated to the court—defendant's counsel simply observing that she (Hilda) believed *it* because she was told *it* by Fisher, whatever exactly that may mean. The observation by counsel is apparently entirely irrelevant to the matter elicited. She said she sent Murphy word by Herman Fisher not to call on her—not that Herman told her anything at all. The court properly admonished counsel by observing: "She does not

say she was told.  She says she sent word by Herman Fisher to Murphy not to call there any more because he was a married man."  So that, it appears, the court properly dealt with the request to strike out—that is, did not strike it out because no reason therefor was urged.  Counsel for the prisoner requested the court to strike out for an entirely irrelevant and incompetent reason, and, after being informed practically, though not in so many words, of the character of his reason, he made no other or further objection and the matter there ended.

An authority in point is *State* v. *Hummer, 73 N. J. L. 714.* There the prosecutor put a question, which was not objected to, and after a responsive answer was made by the witness, defendant's counsel moved that the testimony be stricken out upon the ground that it was irrelevant.  This court held that the irrelevancy, if there were such, was fully displayed by the question and that the answer added nothing to it or to any other ground of objection.  The entire record was before this court in that case under section 136 of the Criminal Procedure act, as in this one, and this court held that there was no error in the refusal of the trial court to strike out the testimony thus admitted without objection.  It was pointed out that a refusal to strike out testimony elicited in response to a question unobjected to, reposes in the discretion of the trial judge and that reversal would not be had for refusal to strike out under such circumstances, unless this discretion was oppressively abused.

The case, on this particular head, was more strongly in favor of the plaintiff in error in State *v.* Hummer than in the case under consideration.  There the question—the answer to which was asked to be stricken out—was said to be "irrelevant," an allowable objection, but here no recognized legal ground of objection was stated, only an observation made, which of itself was irrelevant to the *answer* and did not go to the *question* at all.  There is nothing in this objection and it may be dismissed without further examination.

3. As to the alleged involuntary confession of the defendant:  This was made in jail to Prosecutor Atkinson, Sheriff Jordan and Mr. Powell, who took it down stenographically

and testified to it, refreshing his recollection from his original notes. Powell testified that the prosecutor asked the defendant if he wanted to make a statement and warned him that anything he might say would be used against him and must be entirely voluntary on his part and of his own free will.

The defendant said he did want to make a statement; it was taken stenographically by the witness Powell, reduced to typewriting, brought back to the sheriff's office, read by the prosecutor to the defendant, who then read it himself and signed it.

The trial judge, after examination of the witnesses who were present at the time the confession was made, ruled that it was voluntarily made and admitted it in evidence over the objection of defendant's counsel. It commenced as follows:

"By Mr. Atkinson:

"*Q.* Edgar, you know that you are charged with killing Herman Fisher. And do you know that I am prosecutor of the pleas of Burlington county? .

"*A.* Yes, sir; I did not know that you are the prosecutor, but I know it now.

"*Q.* Yes, I am the prosecuting attorney here and it is my duty to tell you that any statement that you may make will be used against you, and that any statement that you may make must be perfectly voluntary on your part. Now, do you want to make a statement?

"*A.* Yes, sir," &c.

Murphy said in his confession that he laid in wait for his victim and pulled the trigger of his gun twice he thought. Asked where he went after he shot him he said he went home, put his gun away and then went out and met George Fisher and went with him to the Wilhelm house. It is true he said that if he were responsible for killing Herman Fisher he did not know that he did it. He claimed he was under a "spell." He stated he frequently had these. And yet he detailed everything but the acutal murder with particularity. The plea of insanity put forth in his defence was negatived by the verdict of the jury.

Shown the shells taken from his house and box they were

in, and asked if they were the kind of shells he used and the box he took them from he answered, "Yes, sir." Shown empty shells picked up at the scene of the crime and asked if they were the ones used, he said they were. Murphy also stated in his confession that he went to see the older (Wilhelm) girl, who found out from a girl in Riverside that he was married, and he did not go back.

The plaintiff in error asserts that it was the duty of the state to prove that the confession was voluntary, and cites *State* v. *Young,* 67 *N. J. L.* 223, and *Roesel* v. *State,* 62 *Id.* 216. The last deliverance of this court on the question of what constitutes a voluntary confession is to be found in *State* v. *Dolon,* 86 *Id.* 192, in which Chief Justice Gummere, speaking for this court, said (at *p.* 194) :

"If it was the theory of counsel that the confession was not a voluntary one, the objection is without merit. By the decision of this court, in *Roesel* v. *State,* 62 *N. J. L.* 216, the meaning of the term 'voluntary confession' has been definitely settled in this jurisdiction. By it is meant a confession not extorted by any sort of threats or violence, or obtained by any direct or implied promises. There is no suggestion in the proofs that the confession in the present case was induced by either the one or the other of these legally objectionable methods."

And so it is here—"there is no suggestion in the proofs that the confession in the present case was induced by either the one or the other of these legally objectionable methods."

True, Roesel *v.* State and State *v.* Young are authority for the proposition that before the confession of guilt by a prisoner can be offered in evidence against him, it must be preliminarily proved that the confession was voluntarily made, and this question of the voluntary character of the confession is one for the court. This was the course taken in the trial under review. The judge of the Oyer decided that the confession was voluntarily made, and admitted it. The objection to the admission of the confession therefore falls.

4. It is next urged in behalf of the plaintiff in error that the court erred in admitting in evidence the shells found in

the Murphy house, because, it is stated, there was nothing to show that they belonged to Murphy or were the shells referred to in the confession; and that the court erred in admitting the gun found in the room of Murphy, it being stated there was no proof that it was the gun mentioned in the confession. The argument made is, that these exhibits could only be admitted on the theory that the gun must be shown to be the instrument of the crime and the shells must be shown to be a part of the same lot that were used in the execution of the crime. It is stated that this was not shown, and that therefore the exhibits were inadmissible. No authorities are cited to sustain this contention.

The testimony discloses that the gun offered in evidence was taken from the closet in the defendant's room, also the box of shells. The shells were shown to the defendant and he was asked if they were the kind of shells he used and the box he took them from and he answered, "Yes, sir." Shown the empty shells picked up at the scene of the crime and asked if they were the ones used he said, "They are." There was other evidence to show that the shells in the box were taken from the house and that the empty ones were picked up at the scene of the crime. That they were offerable in evidence is too plain for argument. Murphy appears not to have been shown the gun and asked if it were the weapon used by him in the killing of Fisher, but he said he killed him with a gun; told where he lodged it in his own home after the shooting, and one was there found and brought to court and offered in evidence. It is not even arguable that there was any error in this. Quite aside from Murphy's confession, the testimony made the gun and shells evidential. Upon the testimony, exclusive of the confession, it was inferable that the gun was the one used in the slaying, and that the empty shells were the ones whose explosion was the proximate cause of death. The evidence afforded by the confession took it out of the realm of inference and made it plain beyond all question that they were the instrumentalities used. This assignment entirely lacks substance.

5. It is also contended that the court erred in refusing the defendant's request to charge the jury as follows:

"The jury should take into consideration the fact that the friends and family were denied admission to the jail until after the alleged confession was obtained."

The trial judge refused to charge the request because there was no evidence that the friends and family were denied admission to the jail until after the confession was made. This seems to be the fact, and it clearly justified the refusal; but, further, we do not see how the alleged situation trenches upon the issue, which was the guilt or innocence of the accused. It was aside from the issue and was irrelevant. If the objection is intended to go to the question of the voluntary character of the confession, and that only, still there was no error, for there is no statute or rule of law which provides that a confession shall not be taken from a prisoner until after he shall have been visited either by friends or relatives. Again, it is significant that no authority is cited in support of this assignment of error. It is without substance.

6. It is lastly argued that the court erred in refusing the request to charge the jury as follows:

"If you believe that the defendant was denied assistance of counsel, and his counsel was refused admission before the alleged confession was made, then you should take (that) into consideration in giving credence to the alleged confession. The fact that the prisoner was not represented by counsel at the time of the alleged confession may be taken into consideration by the jury in passing upon the credibility of such alleged confession. The jury must consider the fact that the defendant was denied his constitutional rights secured to him under the constitution of the State of New Jersey and the constitution of the United States, to be represented by counsel from the time of his arrest, in giving credence to the alleged confession. In considering the credibility of the alleged confession, you must take into consideration the fact that no one was permitted to see him for several days except the officers who secured the confession."

This is a blending together of the seventh, eighth and tenth requests. The trial judge refused to charge these requests.

The refusal to charge that if the jury believed the defendant was denied the assistance of counsel, and his counsel refused access to him before the confession was made, they should take that into consideration in giving credence to the alleged confession, was, by the trial judge, put upon the ground that there was no testimony that he could remember that showed that Mr. Hillman (the counsel) was denied admission before the confession was made. Mr. Hillman testified that he was a counselor-at-law and represented Murphy at the time of the coroner's inquest and before. He went to the jail to see Murphy and saw the sheriff a few days before the coroner's inquest, he could not give the date. The murder was committed on July 11th and the inquest was held July 17th, six days later. The confession was made July 14th, three days after the murder and three days before the inquest. At the jail he saw the sheriff, but did not see Murphy that day (exactly what day does not appear) because the sheriff would not permit him to do so. Mr. Hillman, after saying that it was a few days before the inquest that he endeavored to get access to Murphy, nevertheless testified that it was not many days— three or four. As shown, it was three days after the confession that the inquest was held, and it may be that Mr. Hillman endeavored to get access to the jail on the day of the confession but after it was made. Of course, it may have been before it was made, but it does not appear, and it is not shown by the defence, who called Mr. Hillman, when his visit took place, and this, of itself, on the fact, disposes of the request against the defendant. But, further, the sheriff testified that he did not refuse Hillman admission to the jail, but did refuse him permission to see Murphy at one time (the time not being stated), and that was after the confession was made; that he afterwards permitted him to have an interview with Murphy. This was brought out on cross-examination of the sheriff when called as a witness for the state, and, as he had not been questioned on this subject on his direct examination, the defence made him its own witness as to the testimony thus elicited.

It is the rule that on cross-examination a witness may not be examined relative to matter upon which he was not examined in chief, and which is material only by way of defence. *Donnelly v. State,* 26 *N. J. L.* 463, 464, 494; *S. C. on appeal, Id.* 601, 609.

It is also the rule that if cross-examining counsel questions a witness upon matter not elicited on direct examination, he makes him his own witness as to such matter, the same as if he had called him when putting in his client's proofs.

No ground was stated by the trial judge for refusing to charge that because the prisoner was not represented by counsel at the time of the confession that that might be taken into consideration by the jury in passing upon the credibility of the confession. We are unaware of any legal doctrine which supports the contention of counsel that he was required to so charge. It seems to us that the request was entirely ill-founded and quite beside the question of the credibility of the confession. In view of the law that a voluntary confession is one "not extorted by any sort of threats or violence, or obtained by any direct or implied promises," it certainly cannot be involuntary because counsel representing the accused was not present at the time it was made.

The contention on behalf of the defendant is that he was denied a right under both the federal and state constitutions to be represented by counsel from the time of his arrest. The provisions in each of the instruments invoked on behalf of the defendant are the same.

The proposition advanced is novel. What infinite confusion would result if a criminal defendant could not be proceeded against without the assignment of counsel by an inferior magistrate, if the prisoner had retained none at the time of his arrest?

The constitution of the United States, by article 6 of the amendments. provides, *inter alia,* that in all criminal prosecutions the accused *shall enjoy the right* to have the assistance of counsel for his defence. 9 *Fed. Stat. Anno.* 324.

The contention that the defendant was denied a right under the constitution of the United States to be represented by

counsel from the time of his arrest, in giving credence to the confession, is disposed of by the fact that the sixth amendment applies exclusively to the powers exercised by the federal judiciary and is not a limitation upon the powers of the states.

It was held by the Supreme Court of the United States in a case which went to that tribunal from this state (*Brown* v. *New Jersey*, 175 *U. S.* 174) that "the first ten amendments to the federal constitution contained no restrictions on the powers of the states but were intended to operate solely upon the federal government."

But that this, however, is subject to the qualification that procedure in the state courts must not warrant a denial of fundamental rights or conflict with specific and applicable provisions of the federal constitution; and, that under our statute providing for a trial by a struck jury impaneled in accordance with its provisions, no fundamental right of the defendant was trespassed upon; that the accused could not complain if he were tried by an impartial jury—that he could demand nothing more.

It is to be observed that the constitution does not provide that the defendant shall have the right to have assistance of counsel from the time of his arrest, but for his *defence*. Obviously, the word *defence*, as here used, means that a defendant is entitled to be represented and defended by counsel when put in jeopardy on his trial, and that his counsel shall have reasonable access to the prisoner for the purpose of preparing his defence. A criminal defendant at large on bail has this latter privilege to the full. By no stretch of the imagination can the provision be construed to mean that one accused of crime shall have the benefit of counsel to advise him as to whether or not he shall confess. *Confession* is a thing entirely apart from *defence* upon a trial. This is evidenced every day by the pleas of guilty made by criminal defendants without the assistance of counsel to advise them thereon. A plea of guilty amounts to a confession in open court.

The constitutional provision, whose protection is invoked, contemplates a criminal prosecution and provides for a speedy

and public trial by an impartial jury, that the accused shall be informed of the nature and cause of the accusation, be confronted with the witnesses against him, have compulsory process for obtaining witnesses in his favor, and (conjunctively) have the assistance of counsel for his defence. It clearly appears that the rights thus intended to be secured to a criminal defendant are rights arising from a criminal prosecution—that is, a trial upon an indictment. A prisoner making a confession is not confronted with any witnesses, at least never in the sense that they are examined in his presence, he can have no process for witnesses in his favor upon such an occasion, and, consequently, he is not entitled to the assistance of counsel to save him from himself. That is done later by the trial court if the confession were unlawfully obtained.

But, if a criminal defendant were entitled to the assistance of counsel to advise him with reference as to making a confession, his right in that regard would be no higher or greater than the right to have the assistance of counsel in his defence.

The constitution of New Jersey (article 1, section 8) contains a provision similar to that of the federal organic law, and the Supreme Court, in *State* v. *Rainey,* 63 *N. J. L.* 363, held that the section conferred a right and privilege for the benefit of accused persons, and that they might waive and renounce the provision made for their benefit. It was alleged for error that Rainey was not defended by counsel. The record did not disclose whether he was of ability to procure counsel or whether he asked that counsel should be assigned to him. The court held that in the absence of an indication that he desired the assistance of counsel, and was denied it, it would be presumed that he failed to invoke the privilege, and chose to defend himself; that the right and privilege is not denied by mere failure to assign counsel. This doctrine is supported in the opinion of this court in *Donnelly* v. *State,* 26 *Id.* 601, wherein Mr. Justice Ogden observed (at *p.* 607) :

"By the constitution of the federal government and the constitutions of the several states, in all criminal prosecutions, the accused shall have the assistance of counsel in his defence.

In the 'act regulating proceedings and trials in criminal cases,' in this state, the court before whom a person shall be tried upon an indictment is required to assign to such persons, if not of ability to procure the same, such counsel as he or she may desire, to whom such counsel shall have free access at all seasonable hours."

Our present Criminal Procedure act, like that in force at the time of the Donnelly case, provides that the court before which any person shall be *tried upon indictment* is required to assign counsel to such person if he is not of ability to procure the same, and that such counsel shall have free access to such person at all reasonable hours. *Comp. Stat., p.* 1838, § 56. It is obvious that these statutes were passed in pursuance of the constitutional provisions above mentioned, and they amount to a construction by the legislature of what was meant by the provision that the accused in a criminal case should enjoy the right to have the assistance of counsel for his defence; and that it is limited to the right to be defended by counsel upon the trial, with free access to the accused at all reasonable times. It is significant that section 17 (*Comp. Stat., p.* 1828), which provides for the examination of persons accused of certain crimes, including murder, directs that the magistrate before whom the accused shall be brought, when in his judgment the ends of justice so require, before he commit the accused to prison, shall take his examination in writing, which shall be signed by the accused if he be willing to sign the same, and that the examination shall be delivered to the clerk of the court in which the accused ought to be tried, but makes no provision for the assignment of counsel to represent the accused on such preliminary examination. Of course, the accused need not submit to any examination, and may waive a hearing.

Upon this whole matter we are clearly of opinion that no reversible error was committed on the trial of the prisoner, and that he did not suffer manifest wrong or injury in respect to any of the matters set out in section 136 of the Criminal Procedure act. Therefore the judgment reviewed must be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, VREDENBURGH, WHITE, TERHUNE, HEPPENHEIMER, WILLIAMS, JJ. 14.

*For reversal*—None.