THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GEORGE COLE AND GEORGE HICKS, PLAINTIFFS IN ERROR.

Argued October 21, 1947—Decided January 29, 1948.

For the plaintiff in error Cole, *David Green* and *Robert Carey, Jr.*

For the plaintiff in error Hicks, *J. Edward Bennett* and *A. Warren Littman*.

For the defendant in error, *Duane E. Minard, Jr.,* Prosecutor of the Pleas, *James R. Giuliano* and *C. William Caruso,* Assistant Prosecutors of the Pleas.

The opinion of the court was delivered by

OLIPHANT, CHANCELLOR. On the trial of an indictment for murder in the Essex County Court of Oyer and Terminer, the plaintiffs in error were convicted of murder in the first degree, without recommendation, and were sentenced to death pursuant to the statute, *R. S.* 2:138–1 and 2:138–4. Another defendant Harris was also convicted of murder in the first degree with a recommendation, but he has not appealed.

The indictment, in the usual statutory form, charged the plaintiffs in error with the killing of one Rudominer and the state offered proof that the killing occurred during the perpetration of a robbery or attempted robbery.

The convictions and judgments below are brought here for review on writs of error, bills of exceptions, and on the certification of the entire record of the trial proceedings, *R. S.* 2:195–1, 16. The judgments are also before the court on appeal pursuant to *Pamph. L.* 1946, *ch.* 187; *R. S.* 2:195A–1, *et seq.*

The decedent Rudominer died of injuries inflicted by one of three men who apparently came into his drug store at about 8:45 P. M. on September 12th, 1946. There were eye witnesses to some of the events that took place.

A woman said she was passing the store when she saw a negro behind the counter in the drug store. Sensing something wrong she called to three negroes, and one of them came over and started with her into the store. She and this man said only two men rushed out of the store at that moment and the other witnesses ran after them but they escaped.

Inside the drug store they found Rudominer bleeding and unconscious on the floor. They called the police. These witnesses were unable to identify the plaintiffs in error or to give an adequate description of the murderers, except to describe the Eisenhower jacket worn by one and a red and black checked shirt worn by the other.

Rudominer was unable to answer any questions for the police and was removed to the hospital where he died the next day without regaining full consciousness. The autopsy established the cause of death as a fractured skull and a cerebral hemorrhage together with various contusions and linear fractures of the temporal regions. In the opinion of the doctor the injuries resulted from being struck with a blunt instrument or object.

The police found several drawers in back of the counter pulled out, the cigarette case disturbed with cigarettes all around the floor. They also found about $20 around the store and about $900 in the safe which was in the rear.

There is little or no significant proof in the record pointing to the guilt of these particular defendants except their confessions, but there is proof in the record corroborating certain facts in the confessions of the plaintiffs in error.

On December 7th, 1946, Harris was apprehended with a stolen car. As the result of the questioning of him Cole and Hicks were picked up by the police early the next day. Harris and Hicks gave statements to the police on December 9th relative to certain holdups. Cole gave written statements to the police on December 10th as to other robberies. None of these statements related to the Rudominer killing.

It appears that while Hicks on Deecmber 9th admitted taking part in the Rudominer holdup, the first statement with respect thereto was taken from Harris between 1:45 A. M. and 4:00 A. M., December 10th. Similar statements were obtained from Hicks and Cole on the afternoon of that day. That same evening in the presence of the Prosecutor and his assistants, under questioning by Chief Sebold of the Newark police department, the prisoners orally repeated substantially the facts already given in their prior confessions. Cole demonstrated how he had knocked Rudominer down and kicked him in the head. Written statements were then taken by the Prosecutor's detectives.

These statements describe a common plan schemed out by these plaintiffs in error, Harris, and one Wright who apparently never appeared on the night of the robbery and who was never apprehended. The statements detail the inspection of

the store, the knowledge or expectation that about $600-$800 might be had, the plan of the robbery, the acts constituting the holdup, the attempt to open the cash register and safe, the savage attack on the decedent including a slugging, kicking and stomping on his head by Cole until he was unconscious, his fall against the cigarette case and the flight and escape of the plaintiffs in error when discovered by the eye witnesses heretofore referred to.

Before these confessions were admitted into evidence all the various police officers and Prosecutor's aides took the stand and testified in detail as to the existing conditions and situations under which the confessions were obtained. The testimony of all the witnesses for the state, including two disinterested citizen witnesses, was that the confessions were voluntarily made and acknowledged by all defendants to be such and that no threats or force were used or any direct or implied promises or inducements made. Such questions were directly asked them by the independent public witnesses and the doctor who found no evidence of marks or bruises. All these witnesses were cross-examined by the defense.

All three defendants, Harris, Hicks and Cole, testified to being struck, pummeled and knocked down by different police officers whom they pointed out. Yet on cross-examination they admitted that when they were confronted by the Prosecutor and his assistants they had not complained of such violence because they said no one would believe them. All their charges as to brutality were categorically denied by the persons involved.

Since the various points argued are supported by some grounds of appeal, assignments of error and specification of causes for reversal it will add to the clarity of this opinion to consider first certain points raised in common by the plaintiffs in error.

Both argue that the judgments are against the weight of the evidence. The provisions for appeal set out in *Pamph. L.* 1946, *ch.* 187, § 9 (*R. S.* 2:195A–9) do not change the duty of the court with respect to its power to reverse a judgment as being against the weight of the evidence. The pertinent provisions of section 9 of the act of 1946 are identical in

language with the provisions of *R. S.* 2:195–19 authorizing as the assigning of error that the verdict is against the weight of the evidence when the plaintiff in error elects to take up the entire record with his writ of error.

Therefore we are constrained to construe *R. S.* 2:195A–9 as we have construed *R. S.* 2:195–19 and the test, under both provisions, to determine whether the verdict is against the weight of the evidence is whether it is so clearly against the weight as to give rise to the inference that it is the result of mistake, passion, prejudice or partiality. *State* v. *Hauptmann,* 115 *N. J. L.* 412; *State* v. *Danser,* 116 *Id.* 487; *State* v. *Cox,* 128 *Id.* 108.

Our examination of the entire record brings us to the firm conclusion that the verdicts are not against the weight of the evidence. We reach this determination in large measure because we concur in the finding of the trial court that the confessions of the plaintiffs in error were voluntary and properly admitted in evidence for reasons that will be stated hereafter.

There is cogent evidence in this case, aside from the confessions, that the decedent Rudominer met a felonious death. The testimony of eye witnesses as to many details corroborates and is corroborated by the confessions. There is ample proof of the *corpus delicti.* The law of this state is settled that if death, through a criminal agency, be proved, and a man confesses to having caused the death, such proof will support a conviction of murder. *State* v. *Kwiatkowski,* 83 *N. J. L.* 650, 660; *State* v. *Banusik,* 84 *Id.* 640, 647; *State* v. *James,* 96 *Id.* 132, 147.

The confessions disclose a common plan in which these plaintiffs in error joined to hold up and rob the decedent's store, the proofs established the felonious killing of the decedent by one of them during the carrying out of this criminal enterprise. They are both chargeable as principals under the rule that where several persons enter into a conspiracy with the common object of committing robbery, and in the attainment of that end one of the conspirators does an act which causes the death of a third person, all are principals in the commission of the homicide and may be convicted of

murder in the first degree. *State* v. *Mule,* 114 *N. J. L.* 384, 396.

The convictions of the plaintiffs in error have ample support in the evidence and are consistent with the weight thereof.

The second point argued in common by the plaintiffs in error is that their confessions were not voluntary, but were induced by threats and fear.

Our cases make it perfectly clear that the admission in evidence of a confession, where there is an objection interposed that the same is not voluntary, presents a fact question for the trial court which is not reviewable on writ of error, where there is evidence to support the ruling below. *State* v. *Compo,* 108 *N. J. L.* 499, 502; *State* v. *Favorito,* 115 *Id.* 197, 202; *State* v. *Ciemiengo,* 116 *Id.* 402, 404. But when the entire record of the trial proceedings is brought up under *R. S.* 2:195–16 it becomes necessary for this court to consider not only whether there was evidence that the confession was voluntarily made but also whether the sufficiency of the evidence supports the finding by the trial court that confession was voluntary. *State* v. *Morehous,* 97 *N. J. L.* 285, 292; *State* v. *Compo, supra; State* v. *Locicero,* 115 *Id.* 208, 209.

A confession by an accused to one in authority to be admitted in evidence must be voluntary. By this is meant that the confession must not be extorted by any threats or violence, nor obtained by any direct or implied promise relating to some benefit to be derived by the accused in the criminal prosecution. *Roesel* v. *State,* 62 *N. J. L.* 216, 225; *State* v. *Young,* 67 *Id.* 223, 227; *State* v. *Kwiatkowski, supra; State* v. *Dolan,* 86 *Id.* 192; *State* v. *Murphy,* 87 *Id.* 515, 525; *State* v. *Genese,* 102 *Id.* 134, 139.

The charges of the plaintiffs in error as to police brutality and the use of force are uncorroborated and negatived by other proofs in the case. Ample opportunity was afforded these defendants at different times while the different confessions were being taken to complain to others not involved of the use of force and threats by certain of the police. It is no answer to attempt to say that the Prosecutor, his assistants

and the independent witnesses would not have believed or paid any attention to such complaints against the police.

The true criterion is the actual state of mind of the accused at the time the confessions were made and it does not appear by the proofs that these accused were under undue influence of fear or hope. *Bullock* v. *State*, 65 *N. J. L.* 557, 566. In fact there is no proof of promises or hope of benefit held out as inducements.

However, the complaint is made that it was error to overrule questions seeking to elicit information as to whether the defendants had been advised as to their rights and privileges and the right to counsel.

A prisoner is only entitled to counsel to aid him in his defense, he is not entitled to the aid of counsel to save him from his own voluntary acts. *State* v. *Murphy, supra.* Such cautionary instructions are not an essential step in the establishment of the fact that a confession is voluntary. *State* v. *Hernia*, 68 *N. J. L.* 299, 301.

The weight of the evidence supports the conclusion of the learned trial judge that these confessions were voluntarily made. They were proven at the trial in accordance with established practice. *Roesel* v. *State, supra; State* v. *Hill*, 65 *Id.* 626, 630; *State* v. *Yarrow*, 104 *Id.* 512; *State* v. *Compo, supra.* The jury had before it all the facts relating thereto and it was their function to believe the facts as to the killing set out in the confessions or reject them as they saw fit. *State* v. *Jefferson*, 131 *Id.* 70. They passed on the credibility and not the competency of the confessions, *State* v. *Yarrow, supra* (at *p.* 515); *State* v. *Compo, supra.* The court fully and adequately charged the jury as to such duties. In fact, the trial court charged the jury that if they concluded the confessions were not voluntary they could disregard them. This was an advantage to the plaintiffs in error because it gave them a benefit the law, as it stands, does not bestow. *State* v. *Foulds*, 127 *Id.* 336, 339.

Under Point III the plaintiff in error Cole argues 37 grounds of appeal and specifications of reversal, all relating to the admission and rejection of evidence. These have been carefully examined and relate largely to immaterial facts,

necessary restrictions placed upon cross-examination, and certain questions on the preliminary examination of witnesses as to the admissibility of the confessions. None are of sufficient substance or stature to be harmful error, even if the trial court did not rule correctly, but such is not the situation.

Point IV of Cole relates to the denial of certain requests to charge and exceptions to comments in the charge by the trial court on the evidence.

The trial judge charged all the requests submitted by this defendant in the language requested, except as to a few relating to reasonable doubt and the recommendation of life imprisonment. The proffered requests did not fully or clearly set out the law and the charge as given substantially charged the law covering both these phases of the case. The comments of the trial court were all within the requirements and left the ultimate decision of all facts and the guilt or innocence of the defendant to the jury. *State* v. *Hauptmann, supra.*

Point V of Cole is that he was harmed by certain prejudicial remarks of the Prosecutor on summation. On the first objection, counsel for the defense suggested that the record on the point be read to the jury. This the court ordered done. Then followed certain remarks, now objected to, concerning which no objection was entered or request to charge made. *State* v. *Hauptmann, supra; State* v. *Barts,* 132 *N. J. L.* 74; *affirmed, Ibid.* (at *p.* 420).

Point VI of Cole is that the trial court erred in overruling the challenge to the array.

The plaintiff in error was afforded every opportunity to prove a systematic or intentional limitation of representation of negroes on the panel. The proofs failed to establish such a limitation. A similar situation was considered and approved by this court. *State* v. *Simmons,* 120 *N. J. L.* 85.

The brief filed on behalf of the plaintiff in error Hicks signally fails in compliance with the rules of this court, and it is difficult to determine what grounds or assignments, if any, are relied on. In fact under his second point allusions are made to objections taken on behalf of Cole only. Under this point it is argued that it was error for the trial court to strike the answer to the following question:

"*Q.* Is it probable that a blow by a piece of lead pipe would produce the same condition you found? *A.* Probably."

The court asked counsel if he intended to offer proof of such a blow. Such proof was immaterial to the theory on which the state was proceeding, the intent to commit the crime of robbery was the controlling element. *State* v. *Carlino*, 98 *N. J. L.* 48, 52; *affirmed*, 99 *Id.* 292. These questions could only be material if the element of robbery was eliminated, and there was a question as to whether there was a willful, deliberate and premeditated killing. *Cf. State* v. *Cox, supra* (at *p.* 112).

Point IV of Hicks relates to exceptions to the charge and fail for the same reasons that the objections of Cole were lacking in sufficiency.

We perceive no error. The judgments under review are accordingly affirmed.

*For affirmance* — The Chancellor, Chief Justice, Bodine, Donges, Wachenfeld, Eastwood, Burling, Wells, Dill, Freund, McLean, JJ. 11.

*For reversal*—Heher, Colie, Schettino, JJ. 3.