14 N.J. Super. 77 (1951)
81 A.2d 382
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MILDRED J. GRIFFITH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1951.
Decided June 11, 1951.
*79 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Stephen VR. Strong argued the cause for the plaintiff-respondent (Mr. Matthew F. Melko, attorney).
Mr. Joseph Butt argued the cause for the defendant-appellant.
The opinion of the court was delivered by EASTWOOD, J.A.D.
The defendant, Mildred J. Griffith, seeks to void the judgment of conviction and sentence imposed *80 upon her by the Middlesex County Court, following her plea of non vult to a charge of having committed the crime of atrocious assault and battery.
The defendant was taken into custody on November 6, 1948, and arraigned before the local police the same evening. She entered a plea of guilty and was committed to the Middlesex County Workhouse to await the action of the grand jury. On three separate occasions the warden of the workhouse discussed with her the advisability of signing a waiver of indictment and seeking a trial before the court without a jury. On the first two occasions she did not sign the waiver, but did so on the 16th of November, 1948. On the last-mentioned date she appeared, without the assistance of counsel, before the county court, when she entered a plea of non vult and was committed to the Clinton Reformatory for Women for classification for a period of 90 days. She was returned to the Middlesex County Court on April 14, 1949, at which time the court sentenced her to the Women's Reformatory at Clinton for an indefinite term. On January 17, 1951, the defendant applied for and obtained a writ of habeas corpus, on the ground that her imprisonment is illegal; that she signed the waiver of indictment and entered a plea of non vult upon the advice of the warden of the Middlesex County Workhouse, who assured her that she would either be placed on probation or would receive a suspended sentence. The Superior Court, Law Division, Union County, at the conclusion of the habeas corpus proceeding, dismissed the writ.
The crime of atrocious assault and battery is a high misdemeanor (R.S. 2:110-1), and the punishment therefor may be a fine of not more than $2,000 or imprisonment not exceeding seven years, or both (R.S. 2:103-5). The defendant being a female over the age of 16, she was committed to the women's reformatory (R.S. 30:4-154, as amended by L. 1946, c. 312, p. 1025, sec. 2), for an indeterminate sentence not in excess of the maximum for such crime (R.S. 30:4-155), as amended L. 1946, p. 1025, sec. 3.
*81 The only substantial question that we need to discuss and decide is whether the defendant was deprived of her constitutional right to counsel to assist her in her defense, in violation of Article I, par. 10, of the 1947 State Constitution, as implemented by Rule 2:12-1, and the due process clause of the Fourteenth Amendment to the Federal Constitution. Art. I, par. 10, of the New Jersey Constitution reads as follows:
"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor; and to have the assistance of counsel in his defense."
Rule 2:12-1 provides as follows:
"(a) If the defendant appears in court, without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at the trial unless he elects to proceed without counsel or is able to obtain counsel. In cases other than murder, counsel may be assigned by the court from the members of the county bar, in alphabetical rotation in general. Law clerks and law students residing in the county shall be assigned to them, wherever possible, to act as clerks in the investigation and preparation of such cases."
The defendant argues that her constitutional rights were violated from the very inception of the charges against her, in that at no time was she informed of her right to nor was counsel appointed to advise and aid her in discussing her case and the course most desirable for her to pursue, particularly with respect to the proposed signing of the waiver of indictment and her ensuing appearance before the county court when she entered a plea of non vult.
We have carefully examined the record and are convinced that the defendant fully comprehended the meaning and purport of the waiver of indictment. At the habeas corpus proceedings, she testified that she discussed this matter with the warden on three separate occasions, the first, two or three weeks after being committed to the county workhouse, the second, one and a half or two weeks later, *82 and the third, four or five days thereafter; that when she signed the waiver she was ill and wanted to have the disposition of her case speeded up rather than await the delayed action of the grand jury; that the warden fully explained the meaning of the waiver and that it would result in the avoidance of the delay of awaiting the submission of the charges to the grand jury and result in a speedier hearing. It is settled that one accused of a crime may not only waive his right to a trial by jury, but also dispense with an indictment by a grand jury. These statutory provisions (R.S. 2:191-1) are made for the benefit of the accused and both are subject to that fundamental rule of law that a person may renounce a provision made for his benefit "and to that maxim quilibet potest renunciare juri pro se introducto, which applies as well to constitutional law as to any other." State v. Stevens, 84 N.J.L. 561, 563 (Sup. Ct. 1913); State v. Rogers, 122 N.J.L. 490 (Sup. Ct. 1939); affirmed 126 N.J.L. 428 (E. & A. 1941). A person accused of crime is only entitled to counsel to aid him in his defense, not to save him from his voluntary acts. State v. Bunk, 4 N.J. 461, 470 (1950). We are satisfied that the defendant fully understood the waiver of indictment when she signed it and conclude that she is bound thereby.
However, with respect to the ensuing action resulting in her plea of non vult and her commitment to the reformatory for classification and the later sentence and commitment, we think there is merit to her contention that she was entitled to and should have had counsel to advise and aid her in her defense. The testimony of the workhouse warden generally corroborates the defendant's assertions of her discussions concerning the signing of the waiver and the warden's assurance of probable probation. We quote the pertinent excerpts of the warden's testimony:
"Q. Now, if as a matter of fact at the conclusion of the first conference that you had with Mrs. Griffith she declined to sign the waiver as you characterize it, what was your reason for again calling her back to the office?
*83 A. I did not call her. She asked to see me. She asked Mrs. Butterworth that she be allowed to see me. I don't call the women prisoners down.
Q. Did you call her the first time? A. No. Mr. Drosdick came to see her.
Q. And through Mr. Drosdick's (a county detective) intervention she came to your office? (Parenthesis ours.)
A. Well, I don't say no. He spoke to her and asked her to sign the accusation and she didn't do it so he just left the case lay there for quite a while and then she asked to see me and she asked me about her case and I told her if she wanted a speedy trial and wanted to get her facts before the probation department she should sign the accusation."

* * * * * * * *
"Q. You felt that her remaining in the Middlesex County Workhouse was detrimental to her health, is that right?
A. Well, she is a nervous type of woman very temperamental, and naturally we try to soothe them as much as possible and I explained to her all the way through what might happen to her and I told her if she signed the waiver she would go and plead non vult, her case would be immediately referred to the probation department and then the probation agents would come out and talk to her and she could explain everything about why she had stabbed this woman, and I certainly did not do anything to hurt her."
The State relies on the cases of State v. Murphy, 87 N.J.L. 515, 530 (E. & A. 1915); State v. Bunk, supra; State v. Cole, 136 N.J.L. 606, 612 (E. & A. 1948), as holding that the law over the years in this State has been that a person is only entitled to have the assistance of counsel in his defense, not to save him from his own voluntary acts. An examination of these cases reveals that they all deal with the question of confessions and have no applicability to the question under discussion, namely, whether the defendant's constitutional rights were violated in not having counsel to assist her in her defense. In the Murphy, Bunk and Cole cases, the defendants were all represented by counsel who assisted them in their defense, but did not have counsel at the time the confessions were made. The State contends that the defendant here, by entering a plea of non vult, abandoned or waived her right to counsel. The rule or principle has been enunciated and applied that in habeas corpus proceedings, after a penal judgment and sentence, there should *84 be no presumption that the accused, prior to the judgment or sentence, waived his right to the assistance of counsel, but that the court should indulge in every reasonable presumption against such a waiver, and that, since a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege, the accused cannot be deemed to have waived his right to assistance of counsel where he did not know and was not advised of that right. Kruttschnitt v. Hagaman, 128 N.J.L. 246, 250 (Sup. Ct. 1942); Johnson v. Zerbst, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019 (1938). An examination of the record here convinces us that under the circumstances the defendant was not sufficiently aware of her constitutional right to counsel nor do we think she had an understanding comprehension of the legal meaning and effect of her plea of non vult; in fact, we doubt very much if laymen generally understand it. It is settled that a plea of non vult has the same effect as a guilty plea. State v. Alderman, 81 N.J.L. 549 (E. & A. 1911); Kravis v. Hock, 136 N.J.L. 161 (E. & A. 1947). It appears to us from the record that the defendant could have reasonably assumed from the warden's assurances, that if she would enter the plea of non vult, upon her return from the women's reformatory after a preliminary classification period, she would then be placed on probation. It is undisputed that the defendant was ill; that medical care was given her while in the workhouse and the prospect of being released from confinement prompted her to enter her plea of non vult. We are unable to say from the record whether she had a defense to the accusation against her, whether it would have been more advisable for her to stand trial or just what course would have been best for her to pursue in defending herself against the charge made against her. At least, under the circumstances, and with the seriousness of the crime charged against her, in all fairness she should have had the opportunity to either engage counsel or have counsel assigned to her by the court so that the facts and the legal aspects thereof might have been explored by some competent attorney, who *85 could have then intelligently assisted her in her defense. While the warden explained to her that she might be placed on probation, on the other hand, no one ever told her that she might be required to serve the maximum sentence of seven years or pay a fine of $2,000, or both. The question at issue here has been discussed and decided by the United States Supreme Court in numerous cases. One of the leading cases is that of Powell v. Alabama, 287 U.S. 45, 77 L.Ed. 158 (1932), wherein it is stated:
"What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense."

* * * * * * * *
"Judge Cooley refers to the right of a person accused of crime to have counsel as perhaps his most important privilege, and after discussing the development of the English law upon that subject, says: `With us it is a universal principle of constitutional law, that the prisoner shall be allowed a defense by counsel.' 1 Cooley's Constitutional Limitations (8th ed.) 700. The same author, as appears from a chapter which he added to his edition of Story on the Constitution, regarded the right of the accused to the presence, advice and assistance of counsel as necessarily included in due process of law. 2 Story on the Constitution (4th Ed.) sec. 1949, p. 668. The state decisions which refer to the matter, invariably recognize the right to the aid of counsel as fundamental in character. E.g. People *86 v. Napthaly, 105 Cal. 641, 644, 39 Pac. 29; Cutts v. State, 54 Fla. 21, 23, 45 So. 491; Martin v. State, 51 Ga. 567, 568; [1 Am. Crim. Rep. 536]; Sheppard v. State, 165 Ga. 460, 464, 141 S.E. 196; State v. Moore, 61 Kan. 732, 734, 60 Pac. 748; State v. Ferris, 16 La. Ann. 424; State v. Simpson, 38 La. Ann. 23, 24; State v. Briggs, 58 W. Va. 291, 292, 52 S.E. 218."
Cf. Williams v. Kaiser, 323 U.S. 471, 89 L.Ed. 398 (1944); Von Moltke v. Gillies, 332 U.S. 708, 92 L.Ed. 309 (1948); Uveges v. Pennsylvania, 335 U.S. 437, 93 L.Ed. 127 (1948).
We are satisfied that defendant's constitutional right to have counsel assist her in her defense was violated. See Walker v. Johnston, 312 U.S. 275, 85 L.Ed. 830 (1941), wherein Mr. Justice Roberts, speaking for the court, stated: "If he (the defendant) did not voluntarily waive his right to counsel, or if he was deceived or coerced by the prosecutor into entering a guilty plea, he was deprived of a constitutional right." (Parenthesis ours). We do not think that under the circumstances the fundamental rule of fairness was accorded to the defendant. Cf. State v. Cooper, 2 N.J. 540, 559, 560 (1949).
The judgment of conviction and sentence are set aside and the defendant is remanded to the Middlesex County Court for such further proceedings as may be taken on the waiver of indictment.