IN THE MATTER OF THE PETITION OF LEO ROBERT
FORCELLA FOR A WRIT OF HABEAS CORPUS.

Argued April 2, 1963—Decided June 3, 1963.

*Mr. Lee A. Holley* argued the cause for petitioner-appellant
(*Mr. Frank A. Paglianite,* attorney; *Mr. Holley,* of counsel
and on the brief).

*Mr. Joseph P. Lordi,* First Assistant Prosecutor of Essex County, argued the cause for respondent-respondent, State of New Jersey (*Mr. Brendan T. Byrne,* Prosecutor of Essex County, attorney; *Mr. Peter Murray,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered

PER CURIAM. Leo Robert Forcella appeals from an order of the Superior Court, Law Division, dismissing his petition for a writ of *habeas corpus.* Forcella shot and killed his girl friend, Marion Wetzel, on February 4, 1960. At that time he was on parole after having served 10 years of a 25 to 30-year sentence for killing his wife in 1948. He pleaded *non vult* to the earlier killing, which, he asserted, occurred during an interval when he had blacked out—the identical and only defense offered by Forcella to the second killing. For the slaying of Marion Wetzel, he was convicted of murder in the first degree without a recommendation of life imprisonment. He appealed, claiming that the verdict was against the weight of the evidence and that the court improperly charged the jury. We affirmed. *State v. Forcella,* 35 *N. J.* 168 (1961).

On July 30, 1961 Forcella obtained a stay of execution pending consideration of his petition for rehearing, which was denied without opinion on December 11, 1961. A second petition for stay of execution, submitted by present counsel, neither of whom represented Forcella at trial or on the first appeal, was denied by this court on January 29, 1962. The following day a Justice of the United States Supreme Court granted Forcella a writ for a stay of execution to allow him to petition that court for a writ of *certiorari.* On April 30, 1962 his petition was denied. 369 *U. S.* 866, 82 *S. Ct.* 1035, 8 *L. Ed.* 2d 86 (1962).

Forcella then applied to the United States District Court for the District of New Jersey for a writ of *habeas corpus,* asserting that the deficiency of New Jersey law and of the indictment and the circumstances under which the trial was conducted robbed the State proceedings of that essential fair-

ness called for by the due process clause of the Fourteenth Amendment. That court determined that no New Jersey court had ruled on these arguments, and on June 26, 1962 it denied Forcella's petition because he had failed to exhaust his state remedies. An order staying execution during the District Court proceedings remained in effect to allow Forcella to pursue whatever means of redress remained open to him in our courts.

Pursuant to *N. J. S.* 2A:67-16, Forcella made application for a writ of *habeas corpus* to the Superior Court, Law Division. The matter was assigned to the judge who presided at the trial, and a hearing was held on September 21, 1962. The petition was denied and the cause dismissed.

The complaint seeking the writ contains eleven counts all of which are cast by the pleader in constitutional terms. We have considered the merits of the grounds advanced in the complaint and find no substance in any of them. We add that, for the most part, the charges relate to matters which are evident upon the face of the original trial record and which of course were reviewable, as to any claim of error, upon the appeal to us from the judgment of conviction. *Habeas corpus* cannot be used as a device for a second appeal from the original judgment. And insofar as the complaint appears to allege matters beyond the trial record, we find no allegations of fact which would justify a hearing.

The judgment is accordingly affirmed. Stay is denied.

SCHETTINO and HANEMAN, JJ., concur in result.

SCHETTINO, J. (concurring). I concur but feel it necessary to set forth at length my views of the merits of defendant's eleven-count complaint.

Counts 1, 2 and 9 allege in substance that defendant was tried by a biased jury, unfairly selected. Forcella's motion for an order allowing his counsel to interview, examine or question the fourteen jurors in order to establish this charge was denied at the hearing on his petition. In effect, he seeks

another opportunity—originally afforded at the trial—to go into the mental processes of the jury.

Count 1 attacks the qualifications of six of the jurors selected on the basis of answers given on *voir dire*. Defendant alleges that the foreman of the jury said he would not give Forcella the benefit of every reasonable doubt and two jurors indicated they would approach the case with an open mind and a presumption of the defendant's innocence only if he proved himself innocent. Three other jurymen supposedly were not qualified to act fairly because one seemed to attach evidential weight to the indictment, another thought that his preoccupation with illness in his own family would affect his impartiality, and the third had been connected with a law enforcement agency in a civil defense capacity several years before the trial. Suffice it to say that, except for the last-mentioned juror, when the suspect answer of each of the other five jurymen is considered in the context of his overall examination, the alleged disqualification clearly disappears. As for the sixth juror, the inference that he might have been pro-prosecution because of an earlier association with a civilian defense agency is patently without merit. Moreover, not only did all six jurymen pass without challenge by defense counsel, but the defense had not exhausted its peremptory challenges when the fourteenth juror took his place.

The manner in which the jury was selected is attacked in Count 2. Defendant asserts that the trial court acted upon unfair standards by excluding, upon challenge by the State, all prospective jurors who indicated that they did not believe in capital punishment. This, counsel argues, assured to the State a jury actively advocating the death penalty and deprived defendant of a fair trial. When the accused is charged with a crime which carries the death penalty, it is proper for the State to ascertain whether a prospective juror entertains conscientious or religious scruples which would make it impossible for him to render such a verdict, because the State is entitled to a jury not prejudiced against its established laws and statutory enactments. *State v. Rios*, 17 N. J. 572,

590–591 (1955). Such scruples, if present, are a sufficient basis for a challenge for cause. *State v. Juliano*, 103 *N. J. L.* 663, 670–671 (*E. & A.* 1927). See generally, *Annot.*, 48 *A. L. R. 2d* 560 (1956). In passing, I note that in all but one instance defense counsel did not wish to be heard on challenges founded on scruples.

Also included within Count 2 is defendant's allegation that by not excluding selected jurors from the courtroom during *voir dire*, the trial judge exposed them to inflammatory and prejudicial statements, injected by certain prospective jurors during questioning. These comments included one that Forcella should not be turned loose to murder for a third time, and another that defendant was really guilty. The practice of allowing selected jurors to witness the entire *voir dire* (to which defendant's trial counsel did not object) in itself works no prejudice to the accused. *State v. Rios, supra,* 17 *N. J.*, at *p.* 589. However, if an exceptional situation arises which is prejudicial, the trial court should admonish the jury, if that will suffice, or declare a mistrial, if that is found necessary. *State v. Hunt*, 25 *N. J.* 514, 534 (1958); accord, *State v. Ernst*, 32 *N. J.* 567, 575–576 (1960), *cert.* denied 364 *U. S.* 943, 81 *S. Ct.* 464, 5 *L. Ed. 2d* 374 (1961). Although the trial judge did not specifically admonish the jurors to disregard the remarks, his participation in the questioning of prospective jurors who had read newspaper accounts of the murder made it quite clear to those who were and would be selected for the panel that they were to decide defendant's guilt wholly and solely on the evidence adduced during the trial, see *State v. Rios, supra,* 17 *N. J.*, at *p.* 589, and whatever adverse effect may have followed from the reference to Forcella's prior crime and subsequent parole was totally neutralized by defendant's full disclosure of these events during the trial.

Count 9 alleges that the jury was prejudiced by the national acclaim given the subject of capital punishment and the execution of Caryl Chessman immediately prior to the beginning of Forcella's trial. Not only is this assertion speculative,

but the event is too remote from this defendant and his offense to afford a basis for the complaint. *Cf. United States v. Coduto,* 284 *F.* 2d 464, 467–468 (7 *Cir.* 1960), *cert.* denied 365 *U. S.* 881, 81 *S. Ct.* 1027, 6 *L. Ed.* 2d 192 (1961).

Count 3 complains that defendant was deprived of a fair trial by the admission of evidence that allegedly was not only immaterial, irrelevant and misleading, but unfair, prejudicial and inflammatory, *i. e.,* the blood-stained clothing of the decedent and "six grotesque, inflammatory, and frightening pictures of the deceased, each in its own way giving an undeniable impression of horror, sexual involvement, and viciousness." Defense counsel objected only to three photographs taken at the morgue, but his objection was overruled. Compare *State v. Smith,* 32 *N. J.* 501, 525 (1960), *cert.* denied 364 *U. S.* 936, 81 *S. Ct.* 383, 5 *L. Ed.* 2d 367 (1961). The trial court in its discretion could admit the clothes and photographs into evidence, even if they were inflammatory and constituted cumulative evidence, provided the evidence was sufficiently probative of some material fact and substantially outweighed its inflammatory nature. *State v. Smith, supra,* 32 *N. J.,* at *p.* 525. The admission of this evidence, if erroneous, was a matter for appeal and cannot, for purposes of *habeas corpus,* be transformed into a due process problem by labeling the action "unfair" or "prejudicial." Moreover, as a nonconstitutional issue, I find no error in the admission of this evidence.

According to Count 4, Forcella was denied a fair trial because "substantial portions" of the proceedings were held outside his presence, some without the benefit of a court reporter. During conferences in chambers, the prosecutor and defense counsel worked out two stipulations, agreed to excuse a prospective juror, and, together with the trial judge, discussed defendant's requests to charge.

Due process requires that defendant be present "to the extent that a fair and just hearing would be thwarted by his absence." *Snyder v. Massachusetts,* 291 *U. S.* 97, 108, 54 *S. Ct.* 330, 333, 78 *L. Ed.* 674, 679 (1934). In that case Mr. Justice Cardozo said that defendant's presence must bear "a

relation, reasonably substantial, to the fullness of his opportunity to defend against the charge," in contrast to "the privilege of presence when presence would be useless, or the benefit but a shadow." 291 *U. S.*, at *pp.* 105–107, 54 *S. Ct.*, at *p.* 332, 78 *L. Ed.*, at *p.* 678. We indicated in *State v. Auld*, 2 *N. J.* 426, 433 (1949), that the defendant must be present when the jury is present and receiving evidence, *United States v. Johnson*, 129 *F.* 2d 954, 958, 144 *A. L. R.* 182, 188 (3 *Cir.* 1942), aff'd on other grounds 318 *U. S.* 189, 63 *S. Ct.* 549, 87 *L. Ed.* 704 (1943), and that whatever else occurs in his absence will not constitute reversible error if it is not new to the proceeding or is not in conflict with his right to confront witnesses, to be represented by counsel, or to defend on the merits. *State v. Nardella*, 108 *N. J. L.* 148, 153 (*E. & A.* 1931).

The stipulations about which defendant complains obviated the necessity of calling a Judge of the Superior Court and the Chairman of the State Parole Board, both subpoenaed by the defense. It was stipulated that if the Judge had been called, he would have testified that Forcella visited him in his chambers to inquire of him whether he would perform a marriage ceremony between defendant and the decedent, thus corroborating like testimony by Forcella; and if the Chairman of the Parole Board had been called, he would have testified that a psychiatric report (admitted into evidence and read to the jury) was submitted to the board in August 1958, and after a hearing in September, a parole was granted effective January 6, 1959. No contention is made that the stipulations were not in accord with the facts; present counsel merely ask whether we can speculate that they elicited the same facts as personal testimony.

These stipulations, worked out in defendant's absence, did not impair the fairness of the proceedings. An attorney in a criminal case has implied authority to make stipulations and agreements incidental to the management of the defense in matters of trial procedure, and the defendant is bound thereby. *State v. Ciniglio*, 57 *N. J. Super.* 399, 406 (*App.*

*Div.* 1959), certif. denied 31 *N. J.* 295 (1960); *State v. Mulvaney,* 21 *N. J. Super.* 457, 462 (*App. Div.* 1952); *State v. Graham,* 19 *N. J. Super.* 70, 74 (*App. Div.* 1952); see *Horne v. United States,* 264 *F.* 2d 40, 41–43 (5 *Cir.*), *cert.* denied 360 *U. S.* 934, 79 *S. Ct.* 1460, 3 *L. Ed.* 2d 1549 (1959); *Cruzado v. People of Puerto Rico,* 210 *F.* 2d 789, 790–791 (1 *Cir.* 1954); *People v. Prado,* 190 *Cal. App.* 2d 374, 376–377, 12 *Cal. Rptr.* 141, 142 (*D. Ct. App.* 1961); *State v. Barley,* 240 *N. C.* 253, 255, 81 *S. E.* 2d 772, 773 (*Sup. Ct.* 1954). Moreover, although Forcella was not present when counsel agreed to the stipulations, he was present when his attorney placed them on record in open court. If defendant believed this to be harmful, he should have made known his objection and given the court the opportunity to correct the situation. Under the circumstances, we can only conclude that defendant approved of his attorney's actions.

What transpired when one prospective juror was excused in chambers was recorded. During an air raid practice, one member of the jury panel passed an acquaintance in the hall and shook hands with him. The acquaintance was with Forcella's brother. The incident was reported to the trial judge and he informed the attorneys. Defendant's counsel had no objection to having the juror interrogated in chambers to see if he had been approached. Both the juror and Forcella's brother were questioned separately. Although this inquiry disclosed no impropriety in the meeting, defendant's counsel consented to the prosecutor's request that the juror be excused. Compare *State v. Bentley,* 46 *N. J. Super.* 193, 202 (*App. Div.* 1957), where the court held that before it could be said that the conduct of the jurors in mingling with spectators during a recess was prejudicial, defendant had to show not only that there was communication, but that the jurors were influenced thereby. I find no prejudice to Forcella in interviewing or excusing the juror in chambers. *Cf.* "Impaneling or selection of jury in accused's absence," Annot., 26 *A. L. R.* 2d 762, 777–782 (1952). In fact, any unfavorable inference that defendant was trying to reach the jury was obviated.

As for the discussion in chambers of the requests to charge, "a defendant has no absolute right to be present on each occasion when questions of law are argued and any right which he may have may be waived by him or his counsel." *State v. Auld, supra,* 2 *N. J.,* at *p.* 433.

Count 5 finds unfairness and lack of due process in the failure of defense counsel to call as a witness the only psychiatrist (appointed by the court on behalf of defendant) to examine Forcella subsequent to the killing. Although defendant's counsel did call another psychiatrist to testify, the complaint asserts that defendant was informed prior to or during the trial that testimony by said examining psychiatrist would be "extremely helpful" to defendant and intimates that the testimony was suppressed after this doctor "spent substantial time under interrogation" in the prosecutor's office. What witnesses are called is a matter of trial strategy committed to the care of competent counsel, see *State v. Smith,* 66 *N. J. Super.* 465, 469 (*App. Div.* 1961), aff'd 36 *N. J.* 307 (1962); *State v. Bentley, supra,* 46 *N. J. Super.,* at *pp.* 201–204; *State v. Johnson,* 63 *N. J. Super.* 16, 38–42 (*Law Div.* 1960), aff'd 34 *N. J.* 212, appeal dismissed and *cert.* denied 368 *U. S.* 145, 933, 82 *S. Ct.* 247, 370, 7 *L. Ed.* 2d 188, 195 (1961), and I find no basis for the naked charge of improper conduct by the prosecutor (or by defendant's trial counsel).

Count 6 charges that Forcella was deprived of a fair trial because of the unfairness and hostility displayed by the trial judge. Defendant's motion that the judge disqualify himself from passing on the application for the writ was denied at the hearing on the latter. In support of this count, counsel refers to nineteen instances where the court interrupted defendant's testimony. We were concerned with the discretionary power of a court to intervene to facilitate the trial in *State v. Guido,* 40 *N. J.* 191 (1963). After quoting the standard of *Canon* 15 of the *Canons of Judicial Ethics* (that a judge may properly intervene to expedite matters, to prevent unnecessary loss of time, or to clear up obscurities) and its caveat (that he not unduly interfere or participate in the examination of wit-

nesses or indicate to them undue impatience or a severe attitude on his part), Mr. Chief Justice Weintraub pointed out the difficulty in reviewing a charge of unfairness upon a dry record: "A person's manner may negate a barb his printed word seems to hold, just as it may supply a sting the record will not show." 40 *N. J.*, at *p.* 208. Nevertheless, a fair reading of the transcript here indicates that the interruptions were intended to clarify, either because a question or answer was ambiguous or defendant's answers were patently unresponsive. The trial judge performed his assigned task properly, and the charge here made is baseless.

Count 7 merely asserts that the totality of facts alleged in Counts 1 through 6 offend our traditional notions of fair play.

A play on words underlies the claim in Count 8 that Forcella was not indicted and convicted of murder as defined by our statutes, but of common law murder, which offense has been either abolished or made a misdemeanor. I find discussion of this frivolous assertion unnecessary.

Count 10 asserts that one convicted of murder in the first degree is denied due process and equal protection of law by reason of the fact that punishment is determined according to the provisions of *N. J. S.* 2A:113–4, without benefit of the pre-sentence investigation process afforded by *R. R.* 3:7–10(b) to those convicted of other offenses. Not only did present counsel advance substantially the same arguments in their petition for stay of execution in January 1962, but the decisions in *In re Ernst,* 72 *N. J. Super.* 272 (*Law Div.*), aff'd 37 *N. J.* 24, *cert.* denied 370 *U. S.* 959, 82 *S. Ct.* 1612, 8 *L. Ed.* 2d 825 (1962), and *In re Ernst,* 294 *F.* 2d 556 (3 *Cir.*), *cert.* denied 368 *U. S.* 917, 82 *S. Ct.* 198, 7 *L. Ed.* 2d 132 (1961), were adverse to their position and are dispositive of the question.

Defendant concedes that "this Court has already acted, in construing the current status of constitutional rights in the conventional mode of determining punishment for First Degree Murder cases," but submits that "this case presents a much needed opportunity for this Court to consider certain

necessary reforms in administering the death sentence." The argument he makes that one indicted for murder faces the impossible burden of offering evidence as to punishment while maintaining his innocence may have some merit when a defendant denies he committed the offense. But here there is no dispute that Forcella killed his girl friend; his defense was that he blacked out. He was free, within reasonable limitations imposed by the trial court, to offer background information, similar to that included in a pre-sentence report, which he believed would mitigate the sentence. *State v. Mount,* 30 *N. J.* 195, 218 (1959).

Finally, Count 11 speculates that, inasmuch as the jury was not instructed what life imprisonment would mean under our parole system, the death sentence was imposed out of fear that Forcella might be paroled a second time. Our statute requires a jury recommendation to be "upon and after the consideration of all the evidence," *N. J. S.* 2A:113–4, and consistent therewith, a jury must not consider the possibility of parole in reaching its decision, *State v. Hudson,* 38 *N. J.* 364, 374 (1962); *State v. White,* 27 *N. J.* 158, 170–179 (1958), regardless of whether such consideration would tend to influence it to make the recommendation or withhold it.

I therefore find no basis for allowance of the writ.

Mr. Justice HANEMAN joins in this opinion.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.