80 N.J. Super. 259 (1963)
193 A.2d 398
IN RE GUIDO GAROFONE. PETITION FOR A WRIT OF HABEAS CORPUS.
Superior Court of New Jersey, Law Division.
Decided July 12, 1963.
*265 Mr. C. William Caruso, Assistant Prosecutor of Essex County, for respondent (Mr. Brendan T. Byrne, Prosecutor of Essex County, attorney).
Mr. Samuel Weitzman for petitioner.
YANCEY, J.S.C. (temporarily assigned).
Guido Garofone petitioned this court for a writ of habeas corpus. His application was granted and the writ allowed. This opinion is a *266 determination of whether the writ should be sustained or discharged.
Garofone was sentenced on December 12, 1962 by the magistrate of the Municipal Court of the City of Newark to the Essex County Penitentiary, Caldwell, New Jersey, following his conviction on various criminal complaints.
On January 23, 1963 petitioner applied for a writ of habeas corpus. This court, in considering the sufficiency of the pleadings set forth in the petition, assumed that all the factual allegations stated therein were true. It determined that the petition, on its face, was sufficient and that there should be an immediate issue of the writ for hearing thereon. State v. Cynkowski, 10 N.J. 571 (1952); State v. Lenkowski, 24 N.J. Super. 444 (App. Div. 1953).
Petitioner claimed in his application that (1) he was without counsel when he pleaded not guilty to charges before the municipal court; (2) he was not advised of his right to counsel, and (3) the police conducted an unlawful search and seizure of his property in violation of the Fourth Amendment of the Federal Constitution.
Petitioner through counsel assigned by this court proceeded in forma pauperis on a hearing of the issues alleged in his application.
The following facts are summarized from the testimony at the hearing. On or about November 8, 1962 petitioner was arrested by the Newark police. He was taken to the Second Precinct in Newark and charged with pilfering money from parking meters. That evening he was taken from the Second Precinct to Newark Police Headquarters. The next morning petitioner was taken by two members of the Newark Police Department and a special agent of the U.S. Secret Service to petitioner's apartment at 32 West Kinney Street, Newark, N.J. The officers did not have a search warrant. They conducted the search of petitioner's apartment without a warrant.
While Garofone remained handcuffed in an automobile with the two Newark Police Department members, the special *267 agent went to the landlord of the building and obtained a key to Garofone's room. After the special agent had opened the door to the apartment, Garofone was taken into the building by the two detectives and accompanied by them to his apartment. In his presence the detectives found in the apartment a number of counterfeit $20 notes. A further search of the apartment uncovered the items which resulted in the following complaints being made against petitioner:
(1) Receiving stolen goods, to wit: 106 cheeks, in violation of N.J.S. 2A:139-1.
(2) Receiving stolen goods, to wit: Social Security card, automobile charge plate, in violation of N.J.S. 2A:139-1.
(3) Violation of Disorderly Persons Law, in that he did unlawfully have in his possession certain barbiturates at "26-28 West Kinney Street, City" in violation of N.J.S. 2A:170-77.8.
Petitioner was arraigned on these complaints on November 14, 1962. At that time he was advised that he had a right to counsel. The court then postponed the matter until November 27, 1962.
On November 27, 1962 two additional complaints were made against petitioner. These complaints were a result of further investigation by the police of other items taken from his apartment during their search. The complaints were:
(1a) Receiving stolen goods, to wit: one typewriter  value $205, in violation of N.J.S. 2A:139-1.
(2a) Larceny, to wit: defendant did steal one set of dyes, one bottle extract oil  value $103, in violation of N.J.S. 2A:119-2.
Petitioner was arraigned on these two additional complaints on November 27, 1962. He was again advised of his right to counsel. He stated that he did not have funds to retain counsel. The magistrate granted another postponement until December 5, 1962 to enable petitioner to retain counsel.
On December 5 petitioner was brought before the court. He still had not retained counsel and the matter was again adjourned for one week to December 12, 1962.
*268 On December 12, 1962 petitioner was brought before the court. He still did not have counsel. The testimony at the hearing of the writ indicates that on this date the magistrate asked petitioner how he pleaded to the five complaints. Petitioner thereupon waived his right of indictment and trial by jury (N.J.S. 2A:8-22) and pleaded "not guilty" to all of the complaints.
An explanation of the court proceedings as to the manner in which a matter is heard in the municipal court when a defendant comes before the court without counsel and states that he is unable to retain counsel, was explained by the municipal court clerk. He testified that in such a situation it was not the practice of the court to assign counsel to the defendant.
Cross-examination of the court clerk revealed the following:
"Q. I take it for granted that you have defendants say that, `I cannot afford to get counsel'?
A. We have.
Q. Is it not the practice of your court then to assign counsel to such defendants?
A. No, it is not. If you want something further on that  we have attempted to have them assigned through the County Court here but it did not work out so they did not have counsel assigned. We had to go ahead without them.
Q. So that even in a case such as this where a defendant waived his right to indictment and trial by jury and consents to having the magistrate of the Municipal Court try the case, if a defendant says, `I do not have money with which to hire counsel' and still pleads not guilty, then notwithstanding is not counsel assigned to him?
A. On occasions they are, yes. If he came out and said that he desired counsel the judge would attempt to get an attorney that happened to be in the room and assign him to apprise him of his legal rights and represent him.
Q. You say that if he said that he wanted counsel; I did not put that in my question. Supposing he did not say that he wanted counsel and all he said was, `I don't have the money with which to hire counsel and I have no counsel and I plead not guilty'?
A. Well, Counsellor, I cannot answer what would be said under those circumstances.
Q. But it is not the practice of your court to assign counsel to indigent defendants?
A. Not as a general rule unless they so desire or make a definite request for it."
*269 Petitioner did not affirmatively request counsel to be assigned. He did on all occasions continuously bring to the attention of the court that he was unable because of lack of funds to retain an attorney.
Further, from November 8, 1962 until the trial on December 12, 1962 petitioner was incarcerated in the Essex County Jail, Newark, New Jersey.
On December 12 the petitioner was tried on all complaints, found guilty and sentenced to confinement in the Essex County Penitentiary, Caldwell, New Jersey.
The first inquiry is whether petitioner has a constitutional right to have counsel assigned to assist in his defense in the municipal court upon the trial of the complaints set forth in the facts.
Art. I, par. 10 of the 1947 N.J. Constitution provides that:
"In all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense."
The right of an accused person to the assistance of counsel is fundamental. Justice Hall in State v. Horton, 34 N.J. 518, 522 (1961), outlined the development in this State of the attitude of the Legislature and judiciary in regard to counsel for indigent criminal defendants.
"From very early days New Jersey has considered the matter of counsel for an indigent criminal defendant as one of absolute right under state law. State v. Ballard, 15 N.J. Super. 417, 420 (App. Div. 1951), affirmed 9 N.J. 402 (1952). Thus, unlike many other jurisdictions, our requirements have long gone beyond those laid down by decisions of the United States Supreme Court in recent years making appointment an essential of due process under the Fourteenth Amendment in capital cases, Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and a similar requisite to assure a fair trial in an increasing variety of non-capital situations. [Citing cases]
The right of the indigent in this State to be furnished counsel had its origin in a statute passed March 6, 1795  the first enactment on the subject in the country. Trebach, `The Indigent Defendant,' 11 Rutgers L. Rev. 625, 629 (1957); Beaney, The Right to Counsel in *270 American Courts 21 (1955). The act specified that `the court, before whom any person shall be tried upon indictment, is hereby authorized and required to assign to such person, if not of ability to procure counsel, such counsel, not exceeding two, as he or she shall desire, to whom such counsel shall have free access at all seasonable hours.' Paterson, Laws 162 (1800). The later constitutional provision (Const. 1844, Art. I, par. 8, repeated in Const. 1947, Art. I, par. 10) that `In all criminal prosecutions the accused shall have the right * * * to have the assistance of counsel in his defense' was undoubtedly given scope and meaning by the earlier statute and in turn served to add an organic basis to the right. The statute remained on the books in substantially the same form (R.S. 2:190-3) until 1952. Since it covered practice and procedure committed by the 1947 Constitution to the rule-making power of this court, it was not enacted in the revision of Title 2 of the Revised Statutes.
The rules replacing the statute in implementation of the constitutional guarantee extend its scope and facilitate its exercise in an effort to bring closer to attainment the essential goal of equal justice for all. In their present form it is obligatory `where a person charged with crime appears in any court, without counsel' for the judge to `advise him of his right to counsel and of the privilege of having counsel assigned, if indigent, and assign counsel to represent him unless he elects to proceed without counsel or is able to obtain counsel.' R.R. 1:12-9(a). See also R.R. 3:2-3(b), 8:3-3(b). Cf., Jenkins v. State, 57 N.J. Super. 93 (App. Div. 1959), reversed on other grounds 32 N.J. 109 (1960)."
It may be concluded from the above that there is no question in the State of New Jersey as to the right of a criminal indigent defendant to the aid of counsel in a criminal prosecution.
One of the complaints on which petitioner was convicted was that he did unlawfully have in his possession certain barbiturates in violation of N.J.S. 2A:170-77.8, the Disorderly Persons Act. The query is raised, since the Constitution only requires counsel to be assigned in "criminal prosecutions," is the municipal court compelled to appoint counsel for violations of the Disorderly Persons Act? To determine this question, a review of the intent of the Legislature regarding enactment of this law is required.
Disorderly conduct is not an offense known to the common law. The category comprises minor offenses denounced by statute, below the grade of misdemeanor and *271 therefore punishable in a summary manner, yet quasi-criminal in essence and subject to the procedural rules governing criminal prosecutions. State v. Rodgers, 91 N.J.L. 212 (E. & A. 1917); Levine v. State, 110 N.J.L. 467 (E. & A. 1933); McNeilly v. State, 119 N.J.L. 237 (Sup. Ct. 1937); State v. Burkitt, 120 N.J.L. 393 (Sup. Ct. 1938); State v. Labato, 7 N.J. 137, 150 (1951).
Under the revised penal laws of New Jersey (L. 1951, c. 344, approved December 5, 1951, effective January 1, 1952) numerous petty offenses formerly prosecuted as crimes, thus carrying the right to indictment and trial by jury, were down-graded and are now quasi-criminal offenses under the Disorderly Persons Act. Such down-graded offenses are now prosecuted upon sworn complaint. These offenses no longer require indictment and trial by jury. See State v. Maier, 13 N.J. 235 (1953).
The provisions of the Disorderly Persons Act are a police measure designed to afford a speedy and effective remedy where the offense was less aggravating in circumstances. The necessity of summary jurisdiction over petty offenses and the definite advantages to society of a Disorderly Persons Act were recognized from the very beginning of this State. The courts of general criminal jurisdiction could not possibly function effectively in our complicated urban civilization if they alone had exclusive jurisdiction over all of the offenses enumerated in the Disorderly Persons Act. Nor are the advantages all with society. The defendant is spared the brand of being adjudged a criminal, with all of its political, business and social implications; the punishment meted out to him is less severe than that imposed on corresponding crimes, and he is given the right to a speedy trial de novo in the County Court. N.J.S. 2A:3-6; R.R. 2:11.
On the whole, the protection with which the law surrounds the accused in a criminal prosecution is available alike in quasi-criminal offenses. In all cases the defendant must be informed in writing concerning the nature and cause of the accusation or of the indictment for crime, and also of a sworn *272 complaint for a quasi-criminal offense. The burden of proof beyond a reasonable doubt is the same, the rules of evidence apply alike, whether the offense be criminal or only quasi-criminal.
Upon principle, the same rules apply to crimes and quasi-criminal offenses, for liberty of the citizen is in jeopardy in either case. I therefore find that the privilege of having counsel assigned exists in all criminal trial courts, including the municipal court.
Petitioner's second contention is that he was not advised of his right to counsel. The rules of court governing the assignment of counsel to indigent criminal defendants are R.R. 1:12-9, R.R. 3:2-3, R.R. 8:3-3.
R.R. 1:12-9(a), applicable to all criminal matters, directs that "[w]here a person charged with crime appears in a trial court without counsel, the court shall advise him of his right to counsel and of the privilege of having counsel assigned, if indigent, and assign counsel to represent him unless he elects to proceed without counsel or is about to obtain counsel."
R.R. 3:2-3(b) and R.R. 8:3-3(b) require that "the magistrate shall also inform the defendant of his right to retain counsel or, if indigent, of the privilege of having counsel assigned."
Originally, there was no constitutional necessity to inform a defendant of his right to counsel or of the privilege of appointment of counsel if indigent, at the preliminary hearing before a magistrate. To this effect the court in State v. Murphy, 87 N.J.L. 515, at p. 529 (E. & A. 1915) stated:
"What infinite confusion would result if a criminal defendant could not be proceeded against without the assignment of counsel by an inferior magistrate, if the prisoner had retained none at the time of arrest?"
See also State v. Raney, 63 N.J.L. 363 (Sup. Ct. 1899); State v. Cynkowski, supra.
However, when the new court rules were adopted in 1948, they contained a provision directing magistrates to inform defendants of the right to retain counsel at the preliminary *273 hearing. R.R. 8:3-3, originally Rule 8:4-1. The original revised rule contained no requirement that indigent defendants be informed at the preliminary hearing of the privilege of assigned counsel. The rule was subsequently amended and now requires a magistrate to inform defendants not only of their right to retain counsel, but also "if indigent, of the privilege of having counsel assigned."
Decisions under the new rule hold that the trial court has a duty to advise defendant of his right to counsel. The failure to so advise requires the conviction to be reversed. State v. Cynkowski, supra; State v. Griffith, 14 N.J. Super. 77 (App. Div. 1951); State v. Gladstone, 17 N.J. Super. 467 (App. Div. 1952); State on Complaint of Bruneel v. Bruneel, 14 N.J. 53 (1953); State v. Flood, 30 N.J. Super. 196 (Cty. Ct. 1954); State v. Almond, 32 N.J. Super. 465 (App. Div. 1954).
In the case sub judice the testimony at the hearing indicated that the magistrate did not fail to inform petitioner of his privilege. In fact, the petitioner on direct examination by his counsel admitted that on the numerous occasions on which he was taken before the magistrate he was advised of his rights. It is determined by this court that the magistrate did perform his duty of informing petitioner of his right to have counsel assigned. Therefore, I find that the petitioner's second contention is without merit and cannot be sustained.
Petitioner's first contention in his application was that he was without counsel when he pleaded not guilty in the municipal court. R.R. 1:12-9(a), applicable to all criminal matters, provides, inter alia, that "whenever practicable counsel shall be assigned before arraignment." The question then is, at what stage in the proceeding does the right to counsel become operative? This is a crucial question for the defendant. Many of the most important steps in the prosecution's case, excluding the factual investigation, are usually taken during the earliest stages. Intensive police interrogation frequently occurs in the period between arrest and preliminary hearing. A defense counsel who is assigned *274 to defend an indigent defendant at a later stage in the case is at a definite disadvantage.
The controlling constitutional doctrine as to what stage of the proceeding does the right to counsel become operative was set out in State v. Murphy, supra. In that case the defendant was held incommunicado while being interrogated by the police. Defense counsel was not allowed to confer with him. During this period defendant confessed. He was subsequently convicted on a first-degree murder charge. The defendant, on appeal, alleged that the failure to assign counsel to him during the period immediately following arrest constituted a violation of his constitutional right to counsel. To this the court replied:
"* * * [T]he [New Jersey] Constitution does not provide that the defendant shall have the right to have assistance of counsel from the time of his arrest, but for his defense. * * * By no stretch of the imagination can the provision be construed to mean that one accused of crime shall have the benefit of counsel to advise him as to whether or not he shall confess. Confession is a thing entirely apart from defense upon a trial." (87 N.J.L., at p. 530)
Therefore, the fact that a defendant was arrested, booked by the police and interrogated without being advised of his right to counsel, is not a ground for the invalidation of a conviction. A formal charge must be handed down against a defendant before the right becomes operative. In Jenkins v. State, supra, the Appellate Division commented on State v. Murphy, supra. Judge Goldmann wrote:
"In correctly denying the claim our highest court said that the word `defense' in the State court meant that the right to counsel applied to representation when put in jeopardy, and the right to consult with him in preparing a defense." (57 N.J. Super., at p. 110)
The above interpretation is a narrow construction of the declaration of the right to counsel as set forth in the State Constitution. The issue of whether counsel should be assigned at all significant stages of criminal prosecutions cannot be determined by reading Art. I, par. 10 of the 1947 Constitution divorced from the rules of court. The wording of our State Constitution is imprecise as to the outer limits *275 of this right to counsel. It is a declaration of a right, a principle, which can only attain specificity through judicial decision, statutes and rules, which implement it and give it definite content. It would be possible to give a narrow construction to this declaration of the right to counsel by a literal reading of the words "prosecutions," "accused," and "defense." These terms could carry an implication that the 1947 Constitution, like that of 1844 (Art. I, par. 8), is concerned only with a defendant's representation at a trial in which he has denied his guilt. Neither our courts in interpreting Art. I, par. 10, nor the federal courts in interpreting the Sixth Amendment to the Federal Constitution, have thus narrowly circumscribed the right to counsel. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), wherein the Supreme Court held that the Sixth Amendment to the Federal Constitution is made obligatory on the states by the Fourteenth Amendment and that an indigent defendant in a criminal prosecution in a state court has a right to have counsel appointed for him.
The assigned counsel system in New Jersey is keyed to providing counsel for indigent defendants tried in the County Courts. Defendants tried in the municipal courts rarely receive assigned counsel, despite the language of the rule directing assignment of counsel to indigent defendants. The assignment system in New Jersey as it now operates only assures that no indigent defendant in the municipal court is tried without an offer of counsel. It is claimed that the great volume of cases tried in these courts every year presents an almost insurmountable problem to the mechanics of an assigned counsel system, and that it would be difficult to assign individual counsel to every one of the thousands of indigents tried in the municipal courts. Therefore, for these defendants the practical benefits of the amendment to the rule requiring notification of the privilege of assignment by magistrates becomes negligible.
R.R. 1:12-9(a) requires, as was stated above, "[w]henever practicable counsel shall be assigned before arraignment." *276 R.R. 8:3-3 requires the magistrate to inform defendants not only of their right to retain counsel, but also "if indigent, of the privilege of having counsel assigned." Undoubtedly, many of the defendants in summary proceedings do not desire counsel. Many indigent defendants in criminal courts of inferior jurisdiction are most desirous of defense counsel. The provisions in the amended rules were an attempt to improve the position of these indigent defendants.
This intention is readily ascertained from a reading of R.R. 3:2-3(b). This rule relates to preliminary hearings and requires a magistrate to inform a defendant of his right to retain counsel or, if indigent, of the privilege of having counsel assigned. R.R. 3:5-1, dealing with pleas on arraignment, directs that the court, before accepting a plea, shall require the defendant to complete a questionnaire in form of Criminal Procedure Form 13A. This form is only used when a defendant pleads guilty.
R.R. 8:4-2, governing practice in the local criminal courts, describes the procedure at arraignment, but does not mention the presence of counsel. R.R. 8:3-3(b), dealing with the preliminary hearing, does say that in that proceeding the defendant shall be apprised of his right to have counsel appointed, if indigent. And yet, it cannot be denied that counsel is just as important to defendant on arraignment before a magistrate as at the preliminary hearing, and unless he has waived the right to legal representation at that hearing, he must be represented at the arraignment. The rules governing each successive stage of a criminal proceeding do not expressly state that counsel shall be present at, for example, the arraignment, the impaneling of the jury throughout the trial, or at the time of sentencing. In the view of this court, the mandate of R.R. 1:12-9(a) infuses every material step in a criminal proceeding, absent waiver of counsel. Jenkins v. State, supra.
It is the finding of this court that the spirit of our rules, and the guarantee set forth in our State Constitution, when read together require that a defendant shall have the *277 benefit of consulting and advising with an attorney at every significant step of a criminal cause, unless he knowingly and intelligently relinquishes that right.
R.R. 1:12-9(a) requires that counsel shall be assigned unless the person charged elects to proceed without one or is able to obtain his own counsel, or unless the defendant knowingly and intelligently waives his right to have counsel assigned.
From the foregoing I conclude that a defendant clearly has a right to the assistance of counsel before he pleads guilty to a charge against him, and a failure to inform him of this right will vitiate his conviction on such a plea. State v. Griffith, supra.
The first contention of petitioner, that he was without counsel when he pleaded not guilty, on its face and without more indicates a violation of his right to due process of law. But when taken together with his second contention, that he was not advised of his right to counsel, which this court found unsound, the first contention loses its force. That is, if a defendant is not informed of his right to counsel, and without any further information by the magistrate pleads not guilty, his rights are clearly violated. But if he is informed of his right to counsel, as was petitioner, and then pleads not guilty, the question arises whether he clearly and intelligently understood the technical nature of the procedure of which the magistrate was attempting to make him aware.
The court, in allowing the issuance of the writ, kept in mind that the application was not drawn with the assistance of counsel but was the sole effort of petitioner. The issuance of the writ is not to be denied because the allegations of a petition are "suspected to be the false and improbable products of a cultivated imagination." State v. Lenkowski, supra. Nor may it be denied on the basis of information obtained by the court as a result of its own investigation of ancillary circumstances bearing on the matter. In re Leibowitz, 43 N.J. Super. 579, 583 (App. Div. 1957). Where the disclosures of official files and records confirm the *278 factual allegations of a verified application, the application should not be denied. See State v. Raicich, 30 N.J. Super. 316, 321 (App. Div. 1954). Compare State v. Zachowski, 53 N.J. Super. 431 (App. Div. 1959).
The court, as a result of its own investigation bearing on the matter, concluded that there were meritorious points in petitioner's case that warranted adjudication. The court's contention is that if they were properly presented in a trial in the municipal court by learned counsel, the case might end in a different manner or result in the complaints' being dismissed.
The hearing was conducted to determine whether petitioner, having been arraigned, waived in writing his right to indictment and trial by jury, entered a plea of not guilty to all complaints, and been informed of his right to assigned counsel, understandingly and affirmatively waived and relinquished his right to have counsel assigned under the provisions of the Revised Rules, and understandingly proceeded to trial.
If petitioner, after pleading not guilty, did not intentionally relinquish or abandon his right, was the "trial" before the magistrate without assistance of an attorney a deprivation of the petitioner's constitutional guarantee of due process of law?
The first question to be settled is what constitutes a waiver of the right to have counsel assigned, and whether petitioner did in fact waive this right. The rules contemplate an election on the part of an indigent criminal defendant to proceed without counsel. To choose this course is an affirmative waiver of his right. A defendant who proceeds to trial after pleading not guilty and having made his election cannot, after a fair and impartial trial wherein he is convicted, complain that he was deprived of his constitutional guarantee of due process of law.
Now, as to a defendant, who being informed of his procedural rights, makes no assertion either negatively or affirmatively to indicate his intentions, does he relinquish his right *279 to have counsel assigned and agree or consent to be tried before the court? State v. Griffith, supra.
Our courts have held that the right to counsel is not abridged by the mere failure to assign counsel, and that failure to request such assignment justifies a presumption of waiver of the privilege. State v. Raney, and State v. Murphy, supra. But this presumption of waiver is rebuttable and each case must be decided on its own set of circumstances. It is also well-settled that an accused may waive and renounce the provisions made for his benefit. Edwards v. State, 45 N.J.L. 419 (Sup. Ct. 1883); State v. Raney, supra.
A waiver is an "intentional relinquishment or abandonment of a known right or privilege." An accused cannot be said to have waived his right unless and until it be shown that he had been advised of such a right. State v. Griffith, supra.
A defendant is clothed with a presumption on non-waiver, and in order to properly assert the waiver, it must be shown that the waiver was an intelligent one and clearly manifest. In re Palumbo, 58 N.J. Super. 80 (App. Div. 1959). The court, in determining a question of waiver or non-waiver, should indulge in every reasonable presumption against such waiver. As was stated above, a waiver being an "intentional relinquishment or abandonment of a known right or privilege," the court can infer that the accused did not readily give up such a privilege. State v. Terry, 30 N.J. Super. 288 (App. Div. 1954).
In order for a municipal court magistrate to conclude that an indigent defendant has effectively waived his right to have assistance of counsel, or relinquished his right to have counsel assigned, the magistrate should be reasonably certain that he knew and understood that as an indigent defendant he was entitled to assigned counsel without cost. After being reasonably certain that the defendant has this knowledge, the magistrate should elicit from the defendant a conscious, coherent, affirmative indication that he does not desire the assistance of counsel. He must further ascertain that the defendant *280 has abandoned his right to have counsel assigned, and that he voluntarily elected to proceed to trial. Silence does not operate as a waiver.
The transcript shows that petitioner was brought before the magistrate on numerous occasions. He was continuously informed of his right to counsel. On each occasion he was asked whether he had yet obtained counsel. During all of these proceedings petitioner stated that he could not retain counsel because he "did not have funds." The testimony clearly establishes that petitioner was not asked whether or not he elected to have counsel assigned. In fact, the testimony of the municipal clerk on cross-examination shows that it is not the practice of the municipal court to ask an indigent defendant whether or not he wanted to have counsel assigned to him by the court. The clerk pointed out that the magistrate only informs the defendant of the right to have counsel assigned.
The fact that the magistrate continuously adjourned the matter, apparently to allow petitioner time to secure counsel, does not constitute sufficient action on his part to protect the rights of petitioner. This additional time given to petitioner to secure counsel, when viewed in light of the fact that petitioner was incarcerated and was not at liberty to engage counsel through his own efforts during the adjournments, leads to the conclusion that petitioner was deprived of his rights.
The transcript further reveals that petitioner did not affirmatively request counsel to be assigned, but he remained silent except to declare his indigence. The magistrate, the record shows, never made inquiry into or to ascertain why petitioner did not respond.
In the instant case it appears that the magistrate was not reasonably certain that petitioner understood his rights. The petitioner may have had knowledge of what his rights were, but he was not given a proper opportunity to assert them.
I therefore find that the magistrate should have inquired whether the petitioner did affirmatively waive his right to *281 assigned counsel and whether he consciously elected to go to trial without the aid of legal assistance in the preparation of his defense.
There is one further contention in the application of petitioner. He contends that his conviction and subsequent sentencing were brought about by an unlawful search and seizure.
The laws of this State afford every person convicted of a crime a right to appeal, R.R. 1:2-7 (a) and (c), 1:2-8 (a) and (c), upon his compliance with the terms and conditions therein prescribed. This right of appeal does not justify the use of a writ. Clifford v. Heller, 63 N.J.L. 105 (Sup. Ct. 1899); State v. Osborne, 79 N.J. Eq. 430 (Ch. 1911); In re Hall, 94 N.J. Eq. 108 (Ch. 1922); In re Graham, 13 N.J. Super. 449 (App. Div. 1951); In re Tremper, 126 N.J. Eq. 276 (Ch. 1939), affirmed 129 N.J. Eq. 274 (E. & A. 1940). In re Forcella, 40 N.J. 309 (1963).
A writ of habeas corpus, therefore, cannot be used as a substitute for an appeal to attack trial errors. Trial errors include rulings on evidence and other germane questions which arise before or at a trial of a case. A ruling as to whether evidence should or should not be suppressed is to be determined prior to the trial. The proceedings are governed by the rules of evidence. This State is now obliged to follow the "exclusionary" rule of evidence. This "exclusionary" rule commands that where evidence has been obtained in violation of the privilege guaranteed by the Fourth Amendment of the United States Constitution, the evidence must be excluded at the trial.
Questions concerning the admissibility of evidence are therefore not reviewable on habeas corpus. The remedy to correct improper rulings in regard to evidentiary matters is by an appeal taken within the proper time. In re Zee, 13 N.J. Super. 312 (Cty. Ct. 1951); In re McBride, 12 N.J. Super. 402 (Cty. Ct. 1951); In re Caruso, 131 N.J.L. 505 (Sup. Ct. 1944); In re Cooley, 12 N.J. Super. 97 (Cty. Ct. 1951); State v. LaBattaglia, 30 N.J. Super. 1 (App. Div. 1954). In re Bogish, 69 N.J. Super. 146 (Law Div. 1961). *282 I find that the third contention of petitioner is not a proper subject for determination on this writ. Therefore, the court will not make a finding as to whether the evidence obtained by the police, which resulted in the complaints against petitioner, was the result of an unlawful search and seizure. This question of "exclusion" of evidence is left to be determined by a trial court upon appropriate motion brought by an attorney under R.R. 3:2A-6.
In view of the foregoing, the finding of this court is that the writ of habeas corpus be and is hereby sustained.
The writ of habeas corpus goes only to the illegal imprisonment and does not affect the outstanding process against the petitioner. Since I have concluded that the first trial was abortive, the petitioner cannot be discharged finally, but he must be returned under recognized practice for a new trial in accordance with the law. In re Graham, 10 N.J. Super. 422 (Law Div. 1950); In re Carter, 14 N.J. Super. 591 (Cty. Ct. 1951); Smith and Bennet v. State, 41 N.J.L. 598 (E. & A. 1879).
The new trial will not infringe upon any constitutional rights of the petitioner and a plea of former jeopardy will not lie. State v. Turco, 99 N.J.L. 96 (E. & A. 1923); Smith and Bennet v. State, supra; State v. Silver, 127 A. 545, 2 N.J. Misc. 479 (Sup. Ct. 1924); State v. Lamoreaux, 20 N.J. Super. 65 (App. Div. 1952).
It is ordered by this court that the petitioner by released from his imprisonment at the Essex County Penitentiary, Caldwell, New Jersey, and that he be taken to the Essex County Jail, Newark, New Jersey, to continue his confinement or be released upon bail until final determination of this matter.
It is further ordered that the attorney assigned by this court to represent petitioner at the hearing of this writ, take all appropriate actions in the defense of petitioner.