101 N.J. Super. 193 (1968)
243 A.2d 847
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
HARRY C. BOWENS, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division  Criminal.
Decided May 16, 1968.
*196 Mr. Elmer J. Herrmann, Jr., Assistant Prosecutor, for the State (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. George B. Henkel for defendant (Messrs. Marinello, Henkel, Soriano & Klein, attorneys).
YANCEY, J.C.C.
This is a motion for post-conviction relief, pursuant to R.R. 3:10A-1 et seq.
Defendant was convicted of rape by an Essex County jury on January 28, 1966. A complaint about the trial judge's charge was dropped as more appropriate to a direct appeal, and defendant contends on this motion that:
(1) An exculpatory statement taken from him by police officers with respect to the offense and later used at the trial to his prejudice was obtained without advising him of his constitutional rights prior to the taking of that statement, and
(2) He was without sufficient funds for an appeal or motion for a new trial and was not advised of his rights to be assigned counsel to prosecute an appeal.

I
As to the statement, the manner in which it was taken would be relevant to the voluntariness (and thus the probability of truthfulness) of the statement. As the Supreme Court said in State v. Johnson, 43 N.J. 572 (1965), affirmed sub nom. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), denial of an opportunity to consult with an attorney and failure to be advised of the right to remain silent are factors relevant to the *197 issue of voluntariness. In the statement complained of, defendant admitted intercourse with the prosecutrix but claimed there had been consent. At no time during the trial or at the hearing of this motion did he claim that the statement was untrue or involuntarily given. Yet he would invoke procedural safeguards designed to minimize on all occasions any doubt about the voluntariness of an in-custody statement to invalidate the use of his statement. Even though this court has no doubt about the voluntariness of defendant's statement to the police, this court would not hesitate to preclude its use if the situation came under the purview of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Miranda held that statements obtained from defendants during incommunicado interrogation in a police-dominated atmosphere, without full warning of constitutional rights, were inadmissible as having been obtained in violation of the Fifth Amendment privilege against self-incrimination.
However, in Johnson v. New Jersey, supra, 86 S.Ct., at pp. 1774-1775, the United States Supreme Court stated:
"In this case we are called upon to determine whether Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, should be applied retroactively. We hold that Escobedo affects only those cases in which the trial began after June 22, 1964, the date of that decision. We hold further that Miranda applies only to cases in which the trial began after the date of our decision one week ago. The convictions assailed here were obtained at trials completed long before Escobedo and Miranda were rendered, and the rulings in those cases are therefore inapplicable to the present proceeding."
The Miranda case was decided on June 13, 1966. Defendant's trial was completed on January 28, 1966. Thus, the Miranda safeguards were not applicable during his trial.
Defendant's trial did take place after June 22, 1964, the date on which Escobedo was decided. However, in Johnson v. New Jersey, supra, 86 S.Ct., at p. 1781, the United States Supreme Court interpreted Escobedo as follows:
*198 "Apart from its broad implications, the precise holding of Escobedo was that statements elicited by the police during an interrogation may not be used against the accused at a criminal trial,
`[where] the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.'
378 U.S. at 490-491, 84 S.Ct. at 1765."
See also State v. Billingsley, 46 N.J. 219, 234-236 (1966).
At the hearing defendant testified on direct examination that he had dealt with Irving Rand before and considered him his attorney. However, he also testified that he did not remember if he asked to call Mr. Rand while in custody. Thus, defendant cannot assert that he requested and was denied an opportunity to consult with his lawyer. Accordingly, I am satisfied defendant was not deprived of any constitutional rights in the taking and use of his statement.

II
Defendant testified at the hearing that he was represented at his trial by Mr. Irving Rand, whom he retained with funds provided by an uncle. Upon defendant's conviction he had exhausted those funds. There was some indication from defendant's testimony that he might have been able to get additional money for an appeal from the uncle, but defendant himself did not have any funds.
At the hearing defendant testified on direct examination as follows:
"Q. And between the time that you were convicted on January 29th, I believe, and June 17th, 1966, during that time, were you advised by anyone that you had the right to have the Court appoint an attorney to handle an appeal on your behalf?
A. No, sir.
(Objection and ruling)
*199 A. (Continuing) No, sir, I was never advised of any lawyer for appealing or anything like that.
Q. And in fact did you discuss with Mr. Rand whether or not you should try to obtain a new trial or appeal the case?
A. I did, but Mr. Rand didn't give me any answers or anything."
Based on this testimony, I find as a fact that defendant did not have funds to retain counsel after his conviction, was aware of his right to appeal the conviction or to move for a new trial, discussed such action with his retained counsel, and took no further action to appeal his conviction. The exact dimensions of the conversation between defendant and Mr. Rand were not brought out at the hearing and Mr. Rand took no part in the hearing.
With this factual setting, defendant claims his constitutional rights were denied in that no one  not the court nor his lawyer  advised him that, even though he might not have the funds, the court would assign counsel to assist in his appeal. Defendant claims this right to be offered free counsel was established in Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). However, in that case the United States Supreme Court merely held that indigent defendants were denied equal protection of the law where the merits of the one appeal they had as of right from their felony convictions were decided without benefit of counsel, following an independent determination by the California appellate court that the appointment of counsel would be of no value to the defendants or to the court. A California rule of criminal procedure provided for such an independent investigation of the record by the state appellate court before the appointment of counsel.
Such was definitely not the case in New Jersey at the time of the defendant's conviction. At that time the court rule for assigning counsel for appeal to indigent persons charged with crime was R.R. 1:12-9(d):
"Where an indigent person convicted of crime desires to take an appeal, the appellate court on his verified petition, which shall be substantially in the form set forth in Criminal Procedure Form 5C, may assign counsel to represent him. Unless the court otherwise *200 orders, such assignment shall be made prior to the determination by the appellate court of a petition, if any, for furnishing the defendant with a transcript at the expense of the county."
This rule, which was in effect until July 1, 1967, when the New Jersey Public Defender system commenced, contained none of the infirmities present in the Douglas case. However, there the court construed the import of the case as follows: "Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal." 83 S.Ct., at pp. 815-816. Under the court rule in effect at the time of defendant's conviction and also under the present rule, R.R. 1:12-9(b), a defendant has the burden of coming forward and indicating to the court that he desires to take an appeal. Even if, as here, a defendant is aware of his state-created right to appeal, he cannot have sufficient opportunity to meet that burden if he is ignorant of his rights to proceed on appeal in forma pauperis and to free counsel, R.R. 1:2-7. Without such knowledge, he may decline to prosecute an appeal solely because of financial inability. If notice of appeal is never filed, such a person would never have the opportunity to be advised of the right to free counsel to prosecute an appeal. Thus, it is important that a defendant upon conviction be informed not only of his right to appeal and filing requirements but also of his right to have counsel provided if he is without resources. Otherwise the State's appellate machinery would, in its operation, favor the rich and discriminate against the ignorant person of modest means who, at the conclusion of his trial, has become indigent.[1] This would be repugnant to the equal protection clause of the *201 Fourteenth Amendment, for "there can be no equal justice where the kind of an appeal a man enjoys depends on the amount of money he has." Douglas v. California, supra, 372 U.S., at p. 355, 83 S.Ct., at p. 816, quoting Griffin v. Illinois, 351 U.S. 12, 19, 76 S.Ct. 585, 100 L.Ed. 891 (1956). Cf. State v. Allen, 99 N.J. Super. 314 (Law Div. 1968) and federal cases cited therein. Also cf. In re Garofone, 80 N.J. Super. 259, 276-277 (Law Div. 1963), affirmed on other grounds, 42 N.J. 244 (1964), in which I said that "the spirit of our rules, and the guarantee set forth in our State Constitution, when read together require that a defendant shall have the benefit of consulting and advising with an attorney at every significant step of a criminal cause, unless he knowingly and intelligently relinquishes that right."
The only question remaining is, who should convey this advice to a defendant upon conviction. Although the old R.R. 1:12-9 did not deal with this aspect at all, the present version of R.R. 1:12-9, effective July 1, 1967, explicitly places this obligation on counsel assigned to represent a person charged with a non-indictable offense. The last sentence of R.R. 1:12-9(c) reads:
"The representation of the defendant by counsel so assigned shall continue through trial and, in the event of a conviction, shall continue through sentencing and shall include advising the defendant with respect to his right to appeal and, if he desires to appeal, the preparation and filing of the notice of appeal and of an application for the assignment of counsel on appeal, but shall not include representation thereafter on such appeal or any subsequent application for post-conviction relief unless further assigned."
If an indigent is charged with an indictable offense, he can be represented by the Office of the Public Defender. The last sentence of R.R. 1:12-9(a) reads:
"The representation of the defendant by the Office of the Public Defender shall continue through and include any direct appeal from conviction and such post-conviction proceedings or appeal therein as would warrant the assignment of counsel pursuant to court rules."
Thus, it is impliict under this section of the rule that an indigent represented at trial by a lawyer from the Office of *202 the Public Defender will be fully advised by that lawyer as to his rights of appeal.
The only gap in this scheme of the trial lawyer advising a defendant of his rights of appeal is the situation here where defendant retains private counsel with the last of his resources and becomes indigent at the conclusion of the trial. At first blush the situation here alleged might seem to be a case of denial of equal protection in reverse  a defendant able to retain his own counsel receiving worse service than a defendant who is not. It is not, however, because the most likely reason for a retained counsel not to discuss the ramifications of an appeal is that the defendant is then indigent and will no longer be a paying client.
Although some might think it merely a recognition of human fallibility, I think it would be inappropriate for a trial judge who has just done his utmost to provide a fair trial for a defendant to have to inform him of his rights of appeal and in effect encourage him to appeal. Rather, this is a function best borne by trial counsel, who will be better able to identify and evaluate grounds for appeal. Also the present R.R. 1:12-9(a) and (c) indicate that this duty is intended to be placed on trial counsel. Thus, this court believes that the duty of a lawyer, whether retained or appointed, to a defendant client who has been convicted does not end until he has discussed the availability and the advisability of an appeal with him, asked him if he can afford an appeal or other remedy, and, if not, advised him of the availability of assigned counsel.
Although this court is of the opinion that R.R. 1:27A takes precedence over any limitation contained in 1:27B(a) and (d), cf. State v. Allen, supra, it is not necessary at this time to deal with appropriate remedies.[2]
The only evidence presented on the question of whether defendant was advised of the availability of assigned *203 counsel was the testimony of defendant. That testimony raises several doubts as to whether defendant actually and intentionally gave the appearance to his retained trial counsel that he could afford an appeal, thus obviating the need for counsel to advise him, and whether trial counsel did so advise him but defendant did not understand or was not satisfied with what he was told. As to this last question, doubt as to defendant's credibility is increased by the fact that no testimony, or even an affidavit, was secured from Mr. Rand, defendant's trial counsel, who is known to the court as an able attorney, experienced in criminal matters. It is very likely that Mr. Rand would not remember the details of their conversation one way or the other. However, I find that the testimony of petitioner in this instance, by itself, is insufficient to overcome the presumption that "he who had a lawyer at the trial had one who could protect his rights on appeal." Norvell v. Illinois, 373 U.S. 424, 83 S.Ct. 1369 (1963).
Since an application for post-conviction relief is but a modernized, expanded version of the habeas corpus proceeding, the burden of proof of establishing his right to such relief is still with the defendant. He must make such showing "by a fair preponderance of the believable evidence." In re Lenkowski, 17 N.J. 191, 193 (1955); State v. Cynkowski, 10 N.J. 571, 576 (1952); State v. Jacobson, 28 N.J. Super. 226, 231 (App. Div. 1953). After considering all the evidence presented, including the testimony of defendant and the arguments of counsel, I am satisfied that defendent has not sustained his burden. Cf. In re Lenkowski, supra.
I wish to point out to the defendant that once an order is signed in this matter, except for an appeal on this decision, defendant will not be able to raise the question again at a later date. Once an issue has been fully litigated and decided against a party, it may not be raised again. State v. (Edgar) Smith, 43 N.J. 67, 74 (1964); State v. Johnson, supra, 43 N.J., at p. 578. Thus, I will allow defendant *204 30 days from receipt of this opinion to notify this court and the prosecutor of his intention and also to submit any additional proofs going to the question of whether defendant was advised by trial counsel of his right to appeal and his right, if indigent, to have counsel assigned to represent him on appeal. If such notice and proof are not presented, the prosecutor may submit an appropriate order.
NOTES
[1] In Norvell v. Illinois, 373 U.S. 420, 422, 83 S.Ct. 1366, 1368, 10 L.Ed.2d 456, (1963), which dealt with the failure of a state to provide a free transcript of his trial to an indigent defendant because the stenographer had died, the Court stated: "If it appeared that the lawyer who represented petitioner at the trial refused to represent him on the appeal and petitioner's indigency prevented him from retaining another, we would have a different case. Cf. Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811."
[2] It might even be argued that, since counsel was retained, petitioner's remedy lies in a malpractice action, but this is doubtful.